MIGUEL RUIZ, Plaintiff-Appellee, v. LOU WOLF *et al.*, Defendants-Appellants.

First District (4th Division)  Nos. 1—91—3026, 1—92—2105 cons.

Opinion filed July 15, 1993.—Rehearing denied August 13, 1993.

JIGANTI, P.J., dissenting.

Robert A. Egan, of Egan & Trapp, of Chicago, for appellants.

David Feldman, of Feldman & Halprin, of Chicago, for appellee.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff, Miguel Ruiz, brought an action for conversion against defendants, Lou Wolf and C.M.C. Management Company. Following a bench trial the court found a conversion and entered a $48,866 judgment for plaintiff. Defendant Wolf appealed the judgment as against the manifest weight of the evidence.

Eleven months later, defendant filed a petition and supplemental petition to vacate the judgment under section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401). The court heard arguments by counsel and then denied the petitions. Defendant filed a second appeal alleging that the court erred when it denied the petitions without holding an evidentiary hearing. This court consolidated the two appeals. We affirm.

We first address the appeal from the finding of conversion and the money judgment.

The facts at trial are taken from the bystander's report.

In 1980 plaintiff entered into a five-year lease with Gus Hormovitis for the first floor of a building in Chicago. He bought restaurant equipment, remodeled the space, and applied for a restaurant license, but the city refused to issue it because of building code problems. Plaintiff filed a lawsuit against Hormovitis for his failure to

repair the building, and Hormovitis filed a lawsuit against plaintiff for his failure to pay rent. The parties then entered into a settlement agreement whereby plaintiff would not pay rent if Hormovitis did not repair the building. Hormovitis did not make any repairs, so plaintiff withheld rent, locked the building, and left his equipment inside.

Four years passed.

In 1984 defendant bought the building from Hormovitis and, unaware of plaintiff's lease, rented the space to another person. Defendant remodeled the front of the building and moved plaintiff's equipment to another location. Plaintiff's attorney sent two letters to defendant's attorney requesting that he return the equipment. Plaintiff and defendant met, and defendant signed a note which stated "I am responsible to [plaintiff] for his interest related to equipment on premises during the remodeling of front to secure the building at 1011 W. Irving Park and subject to his attorney's instructions." He also told plaintiff the location of the equipment, but when plaintiff went to claim it, persons, not parties to this action, would not allow him to take it because they said they did not have permission to let the equipment be removed. Plaintiff telephoned defendant, but the calls were not returned. He then filed this action for conversion. By the time of trial, the equipment had disappeared.

At trial plaintiff offered handwritten receipts, cancelled checks, and photographs of some of the equipment as proof of his damages. One receipt which was admitted in evidence lists various equipment purchased by plaintiff from Jorge D'Arquea totaling $16,665 and contains what appears to be D'Arquea's signature. During cross-examination plaintiff admitted that the signature was not D'Arquea's and stated that it could have been written by D'Arquea's wife. (The record provides no explanation for plaintiff's statement.) The receipts and cancelled checks offered by plaintiff amounted to $48,866.

The trial judge qualified plaintiff, who regularly bought and sold restaurant equipment, as an expert witness. He testified that the equipment was worth the amount he paid in 1980 because he had not used it since he bought it. Defendant's expert testified that the equipment had a negligible value. Three other witnesses identified specific pieces of equipment which they had seen in the building.

The court found that defendant had converted plaintiff's equipment and determined that the value at the time of conversion was $48,866.

In his first appeal defendant contends that the court's finding of conversion was against the manifest weight of the evidence. Defendant argues that plaintiff failed to identify every item he claimed was

taken from the building and that he failed to establish the value of the equipment.

■ To prove conversion plaintiff must show: (1) a right in the property; (2) a right to immediate possession; (3) defendant's wrongful control; and (4) demand for possession. *Glaser v. Kazak* (1988), 173 Ill. App. 3d 108, 115, 527 N.E.2d 379, 383.

The bystander's report shows plaintiff established all four requirements for conversion. He also offered defendant's signed statement admitting responsibility for the equipment. In addition to plaintiff's testimony, three witnesses identified specific items of equipment they had seen in the building. We find that plaintiff offered sufficient evidence to support the claim for conversion.

Defendant next argues that plaintiff did not establish the value of the equipment.

The measure of damages for conversion is the fair market value at the time of conversion (*North Shore Marine, Inc. v. Engel* (1980), 81 Ill. App. 3d 530, 401 N.E.2d 269), and it is the plaintiff's burden to show a reasonable basis to determine the value of items converted (*Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 1025, 327 N.E.2d 346, 355).

■ We find that the receipts and checks for each item converted provided a reasonable basis for the value of the equipment. In a bench trial, the judge, as the trier of fact, determines the credibility of the witnesses and the weight to be given the evidence (*Aetna Insurance Co. v. Amelio Brothers Meat Co.* (1989), 182 Ill. App. 3d 863, 865, 538 N.E.2d 707, 709), and the court's judgment will not be modified unless it is excessive or unsupported by the facts (see *North Shore Marine*, 81 Ill. App. 3d 530, 401 N.E.2d 269). We find that the record supports the trial court's award of $48,866 and that this amount is not excessive.

We next consider defendant's appeal from the court's denial of the section 2—1401 petitions.

Defendant's first section 2—1401 petition alleged perjured testimony and included an affidavit by Jorge D'Arquea in support. The affidavit relates to plaintiff's testimony and three exhibits offered as proof that he paid D'Arquea $16,665 for restaurant equipment. In his sworn affidavit dated April 18, 1992, D'Arquea states he did not sign the three exhibits which purport to bear his signature and did not authorize anyone to sign on his behalf. He further states, "I never sold any equipment to [plaintiff] nor have I received any payment from [plaintiff] for any equipment."

Plaintiff responded to the petition less than a month later with a second sworn affidavit by the same D'Arquea. In this affidavit D'Arquea states that he, plaintiff, and plaintiff's brother bought restaurant equipment in 1980, plaintiff kept the equipment, and plaintiff paid his brother and D'Arquea their investment, "which was around $16,000.00." D'Arquea further states that possibly plaintiff's brother signed the three receipts. Finally, he states, "Now that I have had more time to review all the exhibits and documents, my statements [in his affidavit for defendant] are no longer accurate."

After plaintiff filed D'Arquea's second affidavit, defendant filed a supplemental section 2—1401 petition and an affidavit by Denise Torrez. This affidavit relates to plaintiff's testimony and the cancelled check offered as proof that he paid Torrez $250 for a microwave oven. Torrez states in the affidavit that plaintiff wrote her a check for $250, but that this was a loan for school. She states that when she received the check the word "microwave" was not written on it and that she did not sell plaintiff a microwave oven.

In response plaintiff filed an affidavit in which he states he wrote Torrez a $250 check, received cash in return, and bought a microwave oven from a private party. He further states that he wrote "microwave" on the check after it cleared and was returned to him by the bank.

The court heard argument to determine whether or not to hold an evidentiary hearing. Defense counsel then made an offer of proof that an officer from plaintiff's bank would testify that five checks admitted in evidence, including the check to Denise Torrez, contained descriptive notations which were not written on the checks when the bank processed them. In another offer of proof, defense counsel stated that Mrs. D'Arquea was available to testify that she and her husband did not receive $16,000 from plaintiff. Counsel also stated that she would testify that although the receipt dated December 12, 1983, lists D'Arquea's address as 5048 North Wolcott, she and her husband did not have any interest in that property until December 26, 1984.

The court denied the defendant's petitions and did not hold an evidentiary hearing. The court held that D'Arquea's identity was disclosed before trial and that defendant could have discovered the evidence offered in the affidavits before the entry of judgment. The judge stated, "[T]his case proceeded to trial ill-prepared, ill-discovered, was lost ***. I think the trial of a case means something. A diligent person could have found out the information that you are dealing with in your petition."

Defendant contends the court erred when it denied the petitions without an evidentiary hearing. He argues that the affidavits contain factual disputes and cites . *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253, which holds that where central facts of a section 2—1401 petition are controverted, an evidentiary hearing must be held.

Plaintiff responds that defendant failed to satisfy the diligence requirement and that there is no factual dispute regarding this issue. He cites *Goncaves v. Saab* (1989), 184 Ill. App. 3d 952, 538 N.E.2d 142, for the holding that to set aside a judgment based upon newly discovered evidence, the evidence must be such as could not reasonably have been discovered before entry of judgment.

A petitioner who seeks relief pursuant to section 2—1401 must show the exercise of due diligence (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381), and a petitioner will not be saved from his own lack of diligence (*Sidenstricker v. Dobbs* (1982), 110 Ill. App. 3d 620, 442 N.E.2d 924). However, the requirement of diligence has not been rigidly enforced where actual fraud or unconscionable conduct played a part in the judgment. *Goncaves*, 184 Ill. App. 3d at 956, 538 N.E.2d at 145.

Defendant's petitions and affidavits allege that plaintiff committed perjury and presented fraudulent documents to the court. Plaintiff attempted to explain defendant's allegations with affidavits of his own. Where there is a genuine dispute as to an issue of fact, the trier of fact must determine that issue. (*Ostendorf*, 89 Ill. 2d at 286, 433 N.E.2d at 259.) We note that *Ostendorf* did not decide whether a "full-blown trial-type hearing" is always required when litigants present contradictory affidavits, but instead deferred to the trial court's discretion to decide whether there is a factual dispute.

The fundamental question on review is this: Did the trial judge abuse his discretion when he dismissed the petitions without an evidentiary hearing based upon a lack of diligence, when that requirement may be relaxed in the face of actual fraud or unconscionable conduct? The most troublesome document the court faced was the first affidavit of D'Arquea. But that affidavit was contradicted by D'Arquea's second affidavit filed a month later. Whichever affidavit spoke the truth, D'Arquea's credibility in an evidentiary hearing was hopelessly tarnished.

■ The offer of proof tendered with respect to the testimony of Mrs. D'Arquea was not accompanied by a sworn affidavit executed by her, but was an assertion by the defense lawyer that Mrs. D'Arquea was available to contradict her husband's second affidavit. No expla-

nation was offered as to why the elements of this offer of proof were not incorporated in the supplemental section 2—1401 petition or supporting affidavits.

In reviewing the supplemental petition of Denise Torrez and the offer of proof that notations were added to five cancelled checks, the court observed at the section 2—1401 hearing that these facts even if proven would not alter its ruling. Newly discovered evidence to justify a new trial or a hearing, in addition to meeting the diligence requirement, must be of such conclusive or decisive character and be sufficiently important enough to make it probable that a different outcome would occur in a new trial. *Bianchi v. Board of Fire & Police Commissioners* (1976), 41 Ill. App. 3d 998, 354 N.E.2d 916.

In this case the trial court did not summarily dismiss defendant's petitions based upon a lack of diligence and lack of a meritorious defense without also examining the substance of the allegations. The judge conducted two hearings and allowed defendant full argument and leave to file a supplemental affidavit when D'Arquea recanted the first. Based upon all the facts, we find that the judge did not abuse his discretion in finding a lack of diligence and in deciding to end the matter without a full-blown evidentiary hearing.

Affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent from the majority's decision to affirm the trial court's denial of an evidentiary hearing on the defendant's section 2—1401 motion. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401.) The majority appears to have based its opinion on the trial court's finding of the defendant's lack of diligence in discovering the alleged fraud before trial. Further, the majority seems uncertain as to whether "a full-blown trial-type hearing" is always required when litigants present contradictory affidavits. 250 Ill. App. 3d at 126.

I agree that in order to preserve the finality and stability of judgments, a section 2—1401 motion should not be used as a vehicle for relitigating factual matters which appear in the record and have been adjudicated earlier by valid means. (See *Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 322 N.E.2d 25; *Davis v. Chicago Transit Authority* (1980), 82 Ill. App. 3d 987, 403 N.E.2d 615.) However, this principle does not operate to preclude petitions where the prevailing party has engaged in fraudulent conduct which resulted in newly discovered evi-

dence bearing on an ultimate issue in the case. *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955.

As the majority notes, a petitioner seeking relief from a judgment must show that the ground asserted for relief would have prevented the entry of judgment against him had it been known at trial, and that the failure to discover or present the ground for relief was not the result of the petitioner's own lack of diligence. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294.) However, the diligence requirement of section 2—1401 does not force parties who are acting in good faith to assume the possibility of fraud in answers to discovery requests and to take extraordinary steps to discover it in the limited time they have before trial. (*Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955; *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253.) In other words, satisfaction of the diligence requirement does not demand that the petitioner anticipate improper conduct. *Goncaves v. Saab* (1989), 184 Ill. App. 3d 952, 538 N.E.2d 142.

In the instant case, the measure of damages for conversion was the fair market value of the equipment at the time of conversion. In order to meet his burden of proof on damages, Ruiz presented the court with handwritten receipts, cancelled checks, and photographs of the converted equipment. His receipts and checks totalled $48,866. The court awarded him $48,866.

Included in the defendant's section 2—1401 motion, alleging perjury and fraud, were affidavits and offers of proof which challenged the veracity of Ruiz's checks and receipts. Offers of proof are an acceptable means of informing the trial court and opposing party of the nature and substance of the evidence expected to be introduced and preserving that evidence for appellate review. *People v. Sanchez* (1989), 131 Ill. 2d 417, 546 N.E.2d 574; *State Bank v. Thill* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156.

The affidavits and offers of proof created a substantial question of actual fraud. Certainly, if the checks and receipts which the court relied on to award the damages were fraudulent, as a matter of law, the relief which Ruiz received was not justified and subject to reversal.

Ruiz testified at trial that he purchased equipment from Jorge D'Arquea. As evidence of the value of this converted equipment, Ruiz tendered to the court receipts totalling $16,665 and signed by D'Arquea. Among the affidavits which were submitted to the court on the section 2—1401 petitions were the conflicting affidavits of Jorge D'Arquea. It is clear from his affidavits that, at the very minimum, the signature represented to the court as his signature was not his

signature. Further, an offer of proof stated that Aura D'Arquea, Jorge's wife, would testify that neither she, nor her husband, received a $16,000 payment from Ruiz. She and her husband did not have sufficient cash on hand at that time to purchase restaurant equipment for $16,000. Moreover, her testimony would state that the address on the receipt was not the D'Arquea address on the date that Ruiz represented to the court that he purchased equipment from them. They did not purchase property at that address until a year after the date on the receipt.

Ruiz also proffered cancelled checks to the court with annotations on the checks of the purchases he made. One of these checks was written to Denise Torrez in the amount of $250 and had the annotation "Microwave" written on the check. Torrez's affidavit states that she did not sell Ruiz a microwave and the annotation "Microwave" was not on the $250 check which she received from Ruiz as repayment for a loan. Additionally, an offer of proof was presented that a bank officer would testify that after having reviewed the microfiche copies of Ruiz's checks kept by the bank, the annotations on four other checks which were presented to the court to indicate Ruiz's purchases were not present on the checks when they were initially processed by the bank.

As stated in *Klein v. La Salle National Bank* (1993), 155 Ill. 2d 201, "[i]f a disputed factual issue exists material to whether relief is justified, an evidentiary hearing is required." (155 Ill. 2d at 205.) I believe an evidentiary hearing was required in order to determine whether the damage award was predicated upon fraudulent evidence. I do not believe the defendant was required to anticipate perjurious testimony, forged signatures on receipts, and misrepresentations made on cancelled checks. The alleged fraud perpetrated on the court strikes at the very essence of the judicial process and mandates an evidentiary hearing.