TED HARRISON OIL COMPANY, INC., Plaintiff-Appellee, v. DAVID DOKKA, Defendant-Appellant (Philip Fromme *et al.*, Defendants).

Fourth District   No. 4—90—0723

Argued May 11, 1993.—Opinion filed July 30, 1993.

David E. Robinson (argued), of Jacksonville, for appellant.

Forrest G. Keaton (argued), of Rammelkamp, Bradney, Dahman, Kuster, Keaton, Fritsche & Lindsay, P.C., of Jacksonville, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Ted Harrison Oil Company, brought this action against the three shareholders (David Dokka, Philip Fromme, and Thomas Walden) of Hess Tire Company (Hess Tire). Plaintiff sought to pierce the corporate veil and impose personal liability on the shareholders for a contract debt owed him by Hess Tire. Plaintiff confessed a motion for summary judgment filed by Fromme, and a default judgment was entered against Walden. Following a bench trial, the circuit court of Morgan County pierced the corporate veil of Hess Tire and entered judgment against Dokka. Dokka appeals that judgment, arguing the trial court erred in holding him personally liable for the debts of Hess Tire. We affirm.

In 1972, Dokka contracted to purchase all the shares (570) of Hess Tire, a Delaware corporation doing business in Jacksonville, Illinois, for approximately $121,000. Hess Tire was engaged in the retail sale of tires and automobile parts and services. From 1978 to 1983 the company also sold used cars through a division known as

Cars Unlimited. In November 1975, Dokka agreed to sell 24% (137 shares) of the stock to defendant Thomas Walden and an additional 24% (137 shares) to David Camp. The sales were on an installment basis requiring full payment by the time Dokka's full payment to Floyd Hess was to be completed. Camp's shares were transferred to Walden and then to defendant Philip Fromme in 1978. Walden and Fromme had completed payment for the stock by 1982 but new share certificates were never drafted or delivered to them.

The gross receipts for the business in 1972 were in excess of $300,000; they increased to over $800,000 in 1981. In 1982 the gross receipts were over $700,000, and Dokka testified 1982 was a "fairly good year." By May 1983, however, Hess Tire was insolvent and was forced to sell the bulk of its assets to Ben Tire Company, a creditor. Hess Tire's income tax returns for 1979, 1980, and 1981 showed a negative net worth. The corporate record book for Hess Tire had no minutes recorded in it after October 1974. There was no evidence of shareholder or director meetings and no notices were prepared or sent out indicating such meetings were to be held. Walden testified there were no formal director or shareholder meetings, but Dokka testified the shareholders met continually as they were all active in the business.

At trial Dokka claimed that following the sale of the business assets in May 1983 he first discovered a number of unexplainable disbursements to Walden and a bookkeeper, Michelle Ferry. Ferry testified she was authorized to write checks on one corporate account entitled Cars Unlimited. She also acknowledged that in 1980 she was romantically involved with Walden. Ferry indicated she would write checks payable to herself at Walden's direction and then Walden would cash them and keep the money. Dokka testified that a number of checks were written on the Cars Unlimited account to cash, Elliot State Bank, and Thomas Walden. There were four checks written to cash for a total of $1,950, all endorsed by Michelle Ferry, and four checks written to Tom Walden for a total of $3,300. Dokka testified he could not find any company purpose for those checks and that other unauthorized loans and bonuses totalling $5,590 were made to Walden.

Walden admitted he removed tires from Hess Tire inventory and placed them in storage. He testified he discussed with Dokka his plan to hide the tires from creditors and sell them later and use the proceeds to buy the radiator shop portion of Hess Tire. Walden claimed that Dokka often discussed "how to get rid of Hess Tire Company without the creditors latching onto it." Walden also testi-

fied cash payments were made to Dokka which were not reflected on the books of Hess Tire, including unrecorded cash bonuses.

Dokka owned the building which Hess Tire used for its business and testified he was entitled to rent of $875 per month from Hess Tire. Two checks drawn on a Hess Tire account for $1,440 each were paid to Morgan County for property taxes on the building. Dokka claimed that as part of the lease agreement Hess Tire was required to pay the property taxes as well as the rent. On January 31, 1983, Dokka wrote a check from Hess Tire to himself for $3,000. Dokka claimed this was an interest payment on a $20,000 note which his mother held against Hess Tire. He testified that the check was written to himself as a "matter of convenience" and that he forwarded the money to his mother. Dokka testified he received an annual salary of $12,000 to $13,000. He, along with the other shareholders, all of whom were active in the daily business of Hess Tire, received bonuses periodically; they never exceeded $2,400. Hess Tire never paid dividends to the shareholders because, according to Dokka, it was never strong enough. Dokka worked for Hess Tire from when he purchased the stock in 1972 until he took a position with the Chamber of Commerce in 1982.

On February 1, 1977, plaintiff contracted to sell its inventory and equipment for its tire business in Virginia, Illinois, to Hess Tire for $109,820 payable in installments. Upon default, plaintiff filed suit against Hess Tire, resulting in a judgment entered on November 2, 1983, in plaintiff's favor in the amount of $47,248. With only $1,500 paid on the judgment, and with Hess Tire out of business and without assets, plaintiff filed the instant suit on January 20, 1987, against Dokka, Fromme, and Walden, the three shareholders of Hess Tire, seeking to hold them personally liable for the balance of the Hess Tire debt. The circuit court of Morgan County entered judgment in favor of plaintiff and against Dokka in the sum of $74,251.61, which represented the principal that remained unpaid plus statutory interest and costs.

■■ ■ A corporation is a legal entity that exists separate and apart from its shareholders, directors, and officers, who are not as a general rule liable for the corporation's debts and obligations. (*McCracken v. Olson Cos.* (1986), 149 Ill. App. 3d 104, 109, 500 N.E.2d 487, 490; *Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 27, 379 N.E.2d 1298, 1301.) One of the primary purposes of doing business as a corporation is to insulate shareholders from unlimited liability for corporate activity. (*Import Sales, Inc. v. Continental Bearings Corp.* (1991), 217 Ill. App. 3d 893,

903, 577 N.E.2d 1205, 1212.) However, in certain situations a court will find shareholders, directors, or officers personally liable for corporate obligations through a remedy commonly known as piercing the corporate veil. (See Margolis, *The Expanding Personal Liability of Corporate Managers and Gambino*, 78 Ill. B.J. 46 (1990); Broida, *The History of the Development of the Remedy of "Piercing the Corporate Veil,"* 65 Ill. B.J. 522 (1977).) A corporate entity will be disregarded where it would otherwise present an obstacle to the protection of private rights or where the corporation is merely the alter ego or business conduit of the governing or dominant personality. (*Import Sales*, 217 Ill. App. 3d at 904, 577 N.E.2d at 1212; *Webb v. Webb* (1989), 180 Ill. App. 3d 619, 622, 536 N.E.2d 206, 208.) For a court to pierce the corporate veil (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128-29, 277 N.E.2d 844, 851-52; *McCracken*, 149 Ill. App. 3d at 109, 500 N.E.2d at 491; *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 850, 415 N.E.2d 1070, 1072-73.

■ In determining whether to disregard a corporate entity, the court will not rest its decision on a single factor but will look at a number of variables, including (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation at the time; (6) nonfunctioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominant stockholders. (*Webb*, 180 Ill. App. 3d at 622, 536 N.E.2d at 208.) The court may also consider whether the dominant individuals commingled corporate funds with personal funds or preferred themselves as creditors. (*McCracken*, 149 Ill. App. 3d at 109, 500 N.E.2d at 491; see generally 18 Am. Jur. 2d *Corporations* §48 (1985).) When such variables are coupled with some element of injustice or fundamental unfairness, the corporation will be considered as an aggregate of persons both in equity and law and its officers, directors, and shareholders will be held liable for the corporation's debts and obligations. (*McCracken*, 149 Ill. App. 3d at 109-10, 500 N.E.2d at 491.) However, piercing the corporate veil is a task which courts should undertake reluctantly. (*Sumner Realty Co. v. Willcott* (1986), 148 Ill. App. 3d

497, 501-02, 499 N.E.2d 554, 557.) At trial, the party seeking to have the corporate entity disregarded has to come forward with a substantial showing that the corporation is really a dummy or a sham for a dominating personality. (*Sumner Realty Co.*, 148 Ill. App. 3d at 502, 499 N.E.2d at 557.) A reviewing court may reverse the finding of a trial court regarding the piercing of a corporate veil where it is against the manifest weight of the evidence. *Kelsey Axle & Brake Division v. Presco Plastics, Inc.* (1989), 187 Ill. App. 3d 393, 401, 543 N.E.2d 239, 244; *B. Kreisman & Co.*, 91 Ill. App. 3d at 850, 415 N.E.2d at 1073.

Here, the trial court noted Dokka "practically admitted" that there was a complete lack of corporate formalities. No records were kept and the company did not hold formal shareholder or director meetings. Dokka made the major decisions for the company and benefited from Hess Tire by receiving a salary, a company automobile, and occasional bonuses. Walden testified that Dokka received cash distributions from the company not reflected in the books and discussed his desire to close Hess Tire while avoiding creditors. Dokka testified Walden was taking funds from the company without Dokka's knowledge. Assuming that was true the trial court could have found that observing corporate formalities would have made Walden's actions easier to detect. Furthermore, it is undisputed that, without any formal approval from the shareholders or board of directors, the company paid taxes on the building, paid Dokka $875 per month to rent the building, and made a $3,000 "interest" payment to Dokka. Although Dokka claimed the $3,000 was an interest payment on a note owned by Dokka's mother, with Hess Tire as payor, the trial court found it suspicious that the payment was made to him and not his mother.

■ The record as a whole supports a finding that there was a failure to observe corporate formalities, nonpayment of dividends, nonfunctioning directors, an absence of corporate records, and that the corporation was a mere facade for the operation of the dominant shareholders. The evidence also indicates that Dokka was personally receiving monetary benefits from the corporation, including cash payments, at a time when the corporation was defaulting on its debt to plaintiff. The trial court could have concluded that it would have promoted injustice to allow Dokka, who for years ignored the corporate form for his own benefit, to claim the protection of the corporate veil to plaintiff's detriment. In light of the evidence, we cannot say it was against the manifest weight of the

evidence for the trial court to hold Dokka personally liable for Hess Tire's debt to plaintiff.

For the reasons stated above we affirm the judgment of the circuit court of Morgan County.

Affirmed.

KNECHT and LUND, JJ., concur.