IOS CAPITAL, INC., Plaintiff-Appellee and Cross-Appellant, v. PHOENIX PRINTING, INC., d/b/a Colortech Printing, *et al.*, Defendants and Third-Party Plaintiffs (Robert C. Russell, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee; Canon U.S.A., Inc., *et al.*, Third-Party Defendants).

Fourth District    No. 4—03—0879

Argued January 28, 2004.—Opinion filed April 22, 2004.

COOK, J., specially concurring.

R. Stephen Scott (argued), Daniel J. Davlantis, and Mark D. Thielen, all of Scott & Scott, P.C., of Springfield, for appellant.

David O. Edwards, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, and Thomas G. Berndsen (argued), of Thomas G. Berndsen, P.C., of St. Louis, Missouri, for appellee.

JUSTICE TURNER delivered the opinion of the court:

In January 1998, plaintiff, IOS Capital, Inc., formerly known as IKON Capital Resources (IOS), and defendant, Phoenix Printing, d/b/a Colortech Printing (Colortech), entered into a five-year written agreement for the lease of two black-and-white photocopy machines (copiers). After May 2000, Colortech stopped making payments, which IOS deemed a default under the agreement. Plaintiff sued defendants Colortech, Joseph Legener, and Robert Russell on various counts, including conversion. The parties proceeded to trial on the conversion count only against Russell. Following a June 2002 bench trial, the trial court found for IOS and against Russell on the conversion count for $139,457.

On appeal, Russell argues the trial court erred because (1) IOS failed to prove he was guilty of conversion, (2) the award of damages and the elements making up the award were inappropriate, and (3) it admitted certain hearsay statements not subject to any exception into evidence. IOS cross-appeals, arguing the court erred in calculating damages. We reverse.

## I. BACKGROUND

In January 1998, IOS and Colortech executed a written five-year agreement (Agreement) for the lease of the copiers by IOS to Colortech. The Agreement required Colortech to make monthly payments of $6,450. Pursuant to the Agreement, if Colortech defaulted, it would pay IOS, *inter alia*, attorney fees, all amounts due under the Agreement, and a 5% penalty on the overdue amount, and would return the system to IOS at Colortech's expense.

Russell was majority owner of Colortech and held a position on the three-member board of directors. He was not active in the daily business of Colortech or operating the copiers. He did authorize Legener, company president, to enter into the Agreement with IOS on behalf of Colortech.

Legener was a corporate officer and director of Colortech until March 2001, when Russell fired him as an employee, officer, and director. While president of Colortech, he managed daily business and oversaw operations at both corporate locations.

Legener testified for IOS that he signed the Agreement on behalf of Colortech and also as a personal guarantor. Colortech made only 26 of 60 payments on the Agreement, the last one on May 1, 2000. On cross-examination, Legener acknowledged whenever he needed IOS copiers moved or picked up, IOS had always been the party to do so. He asked IOS prior to the onset of litigation to pick up the copiers on three separate occasions, but IOS did not do so. He stated the copiers

were not performing and maintenance and service were not adequate, such that "[i]t was costing me more to own the copier than I could possibly get out of the sales and production of the jobs they were designed to produce."

IOS presented evidence Colortech retained the copiers after May 1 and continued to use them for 23 months, made 706,408 photocopies on the copiers during that time, and collected $49,007.88 of revenue from the sale of those photocopies. Almost all of the copies and revenue occurred before November 2000. IOS stated it had demanded Colortech return the copiers to IOS but Colortech refused to do so.

Stephen Young, IOS's recovery analyst, testified he phoned Colortech in October 2000 and "asked to speak to someone in authority." He was transferred to "Diane." Young believed she was someone in authority who could make a decision and resolve the dispute over the copiers. When Young asked about getting the copiers back, "Diane" told him "she was not going to release the equipment and did not want to discuss it any further."

Colortech was served with summons on December 5, 2000. After that date, but before or during March 2001, Russell met with his attorneys, Scott and Scott, who advised him not to return the copiers to IOS. Russell took the advice and ordered Legener not to return the copiers to IOS. At trial, Russell admitted he did not have to take the advice and the decision was his to make.

IOS retrieved the copiers on April 30, 2002. After a bench trial, the trial court found for IOS and against Russell on the conversion count and awarded total damages of $139,457, categorized as follows:

"1. Six months of lost rent [at] $6,450.00      $38,700.00
2. Attorney's fees      $38,445.00
3. Interest at statutory rate      $13,352.00
4. Punitive damages—equal to the amount of      $48,960.00
    income derived from the 706,408 copies
    made after conversion."

This appeal followed.

## II. ANALYSIS

The issue is whether a corporate director and shareholder can be held liable for conversion of copiers subject to a contract by the corporation where his participation was limited to retaining the chattel months after the item was initially converted by the corporation and he relied on the advice of counsel in authorizing the conversion.

### A. Conversion

Russell argues IOS failed to prove (1) all elements of conversion

and (2) he actively participated therein. We agree with his second contention.

### 1. *Elements*

■ Conversion is the unauthorized deprivation of property from a person entitled to its possession. *Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 294, 642 N.E.2d 171, 174 (1994). To prove conversion, the plaintiff must establish (1) a right in the property, (2) a right to immediate possession, (3) wrongful control by the defendant, and (4) a demand for possession. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998). When the trial court determines a plaintiff has proved the elements of conversion, we will reverse only when the decision is against the manifest weight of the evidence. See *Ruiz v. Wolf*, 250 Ill. App. 3d 121, 123-24, 621 N.E.2d 67, 69 (1993).

■ IOS presented evidence at trial it had a right in the copiers. The Agreement indicated Colortech was leasing the copiers from IOS. Legener identified the Agreement as a lease between Colortech and IOS for two black-and-white copiers. Further, in its initial answer, Colortech admitted IOS was the "sole and lawful owner" of the copiers.

IOS also showed it had a right to immediate control. Legener acknowledged the copiers were subject to the Agreement. The Agreement stated a failure to make payments constituted a default, which allowed IOS to either repossess the copiers or demand return of the copiers to IOS at Colortech's expense. Legener acknowledged Colortech was consistently late in making payments. IOS introduced evidence showing Colortech defaulted on the Agreement and had not made a payment since May 1, 2000. In addition, Legener identified a letter received from IOS indicating notice of default.

IOS also presented sufficient evidence of wrongful control. Colortech made no payments on the Agreement after May 1, 2000, yet retained the copiers. IOS attempted to enforce its rights under the Agreement's default provisions to retake the copiers but claims Legener and Colortech ignored the demands. In October 2000, Russell discovered Colortech had stopped paying on the IOS Agreement. Russell told Legener he should work out a deal with IOS, but no deal ever transpired. Colortech was served with summons on December 5, 2000, and Russell was aware of this fact. He later met with his attorneys, who advised him not to return the copiers. Russell admitted he was not obligated to take their advice and he was the ultimate decision maker. Russell instructed Legener not to return the copiers, even though he knew Colortech had stopped making payments under the Agreement. Legener did not return the copiers. Russell admitted keep-

ing the copiers without paying for them was wrong. Under these facts, the trial court could reasonably determine Colortech exercised unauthorized control over the copiers.

IOS also showed it made a demand for the copiers. IOS made several payment demands on Colortech. Further, IOS made multiple demands for the copiers themselves, including one on November 22, 2000. In addition, Colortech admitted in its initial answer IOS demanded surrender and delivery of the copiers to IOS and Colortech failed and refused to do so.

The trial court's finding IOS proved all elements of conversion is not against the manifest weight of the evidence.

### 2. Participation

Russell argues because demand was not made on him personally he cannot be guilty of conversion. However, the question is not whether each element is satisfied as to him but whether he actively participated in the tort.

■ Corporate officers are generally not liable for corporate obligations. *Mannion v. Stallings & Co.*, 204 Ill. App. 3d 179, 191, 561 N.E.2d 1134, 1141 (1990). However, they are liable for any tort of the corporation in which they participate. *Landfield Finance Co. v. Regal Paper Box Co.*, 345 Ill. App. 611, 104 N.E.2d 359 (1952) (abstract of op.) (conversion).

In *National Acceptance Co. of America v. Pintura Corp.*, 94 Ill. App. 3d 703, 706, 418 N.E.2d 1114, 1116-17 (1981), the court recognized the need to protect corporate officers from individual contractual liability. However, it distinguished situations involving breach of contract from those involving torts. *National Acceptance Co.*, 94 Ill. App. 3d at 706, 418 N.E.2d at 1117. A corporate officer who participates in a tort by the corporation may be liable in any one of a number of tort categories, including intentional interference with a contract and conversion. *National Acceptance Co.*, 94 Ill. App. 3d at 706, 418 N.E.2d at 1117; see also *Mannion*, 204 Ill. App. 3d at 191-92, 561 N.E.2d at 1141 (extending the active-participation doctrine in *National Acceptance Co.* to tortious interference with a business expectancy). "[A] corporate officer's individual liability for conversion committed by him personally in behalf of the corporation is established in the same manner as his liability for any other tort; by proof of active participation in the conversion." *National Acceptance Co.*, 94 Ill. App. 3d at 707, 418 N.E.2d at 1117. Therefore, an officer or director is liable in conversion only where he actively participates therein.

Here, Russell knew Colortech was retaining IOS's copiers, even though Colortech had since stopped making payments on the Agree-

ment and IOS considered Colortech to be in default. The record further shows he knew IOS had made demands for the copiers. However, knowledge of the corporation's tort is not enough to hold a corporate officer liable thereunder. Acting on the advice of counsel, Russell decided Colortech would not return the copiers to IOS. He stated the decision was his to make. He participated in the conversion from this point.

However, *any* participation in the tort does not necessarily subject an officer or director to individual liability. Personal liability for actions taken on behalf of the corporation attaches only when the officer or director is alleged to have taken part in the wrongful act *initially giving rise* to the corporation's liability. See *Musikiwamba v. Essi, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985) (discussing principles of officer and director liability in context of employment discrimination case); see also *National Acceptance Co.*, 94 Ill. App. 3d at 707, 418 N.E.2d at 1117 ("Although a corporate officer is not generally liable for breach of contract, his status does not shield him from liability for tortious acts *from which the breach proximately resulted*" (emphasis added)).

■ Here, IOS contends that the conversion of the copiers began in June 2000, when Colortech stopped making payments on the Agreement. According to IOS, this would be the date on which Colortech became liable for conversion. IOS acknowledges the act giving rise to Russell's liability is the order he gave to retain the copiers after speaking with his attorneys. The record contains no evidence Russell gave that order until sometime between December 5, 2000, and March 2001. Therefore, his participation in the conversion was not that which initially gave rise to the corporation's liability.

Moreover, the situation here starkly differs from the situation in *National Acceptance Co.*, where the appellate court concluded a corporate officer was liable for conversion by signing checks for funds due an assignee corporation and depositing them into his own company's account without authorization from the assignee corporation. *National Acceptance Co.*, 94 Ill. App. 3d at 704-05, 418 N.E.2d at 1115-16. The trial court erred here in concluding Russell's participation in the conversion subjected him to liability thereunder.

## B. Qualified Privilege

■ Even if Russell's participation had been sufficient to find him liable for conversion, if the conduct was privileged or justified, Russell is not liable in tort. See 19 C.J.S. *Corporations* § 544 (1990). Courts will recognize a privilege in cases involving a contract where a defendant was acting to protect an interest the law deems to be of equal or greater value than a plaintiff's contractual rights. See *Turner*

*v. Fletcher*, 302 Ill. App. 3d 1051, 1058, 706 N.E.2d 514, 519 (1999) (intentional interference with a contract), citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 157, 545 N.E.2d 672, 677 (1989). Under certain circumstances, a third party may be privileged to perform an act that brings about a breach of contract between other parties. *Turner*, 302 Ill. App. 3d at 1058, 706 N.E.2d at 519. The question becomes whether such a privilege applies where a plaintiff advances the alternative theory of conversion to recover damages due for breach of contract.

■ Under Illinois law, corporate officers and directors owe undivided and unselfish loyalty to the corporation. *Patient Care Services, S.C. v. Segal*, 32 Ill. App. 3d 1021, 1029, 337 N.E.2d 471, 478 (1975). They perform functions for which freedom of action is essential to act in the best interests of the corporation. See Restatement (Second) of Torts § 10(2)(c) (1965). Because officers and directors owe fiduciary duties to the corporation and its shareholders (*Poliquin v. Sapp*, 72 Ill. App. 3d 477, 482, 390 N.E.2d 974, 978 (1979)), their freedom of action aimed toward corporate benefit should not be curtailed by undue fear of liability. Directors and officers must be free to act in pursuit of what they faithfully believe to be in their corporation's best interests.

While this case is framed as a tort action, the copiers were subject to a contract between IOS and Colortech. We find Illinois case law dealing with interference with contracts instructive as to the instant action because in both circumstances whether an officer or director can authorize a breach of contract by the corporation is a primary consideration. Illinois courts recognize a privilege for corporate officers and directors to use their business judgment and discretion on behalf of the corporation. *HPI Health Care Services, Inc.*, 131 Ill. 2d at 157, 545 N.E.2d at 677. The duty of corporate officers and directors to corporate shareholders outweighs any duty they may have to parties contracting with the corporation. *HPI Health Care Services, Inc.*, 131 Ill. 2d at 157, 545 N.E.2d at 677, citing *Swager v. Couri*, 77 Ill. 2d 173, 191, 395 N.E.2d 921, 928 (1979).

The cases cited by plaintiff holding a corporate officer or director liable for intentional interference with a contract or conversion do not control here because they do not address the applicability of a privilege, which would preclude a finding of liability under the active-participation doctrine. For example, while the *National Acceptance Co.* court concluded a corporate officer may be liable for intentionally interfering with a contract under such theory (*National Acceptance Co.*, 94 Ill. App. 3d at 706, 418 N.E.2d at 1117), the Supreme Court of Illinois has recognized a qualified privilege in cases involving

intentional interference with contractual relations (*HPI Health Care Services, Inc.*, 131 Ill. 2d at 157, 545 N.E.2d at 677; *Swager*, 77 Ill. 2d at 189, 395 N.E.2d at 927; *H.F. Philipsborn & Co. v. Suson*, 59 Ill. 2d 465, 474, 322 N.E.2d 45, 50 (1974)). Corporate officers interfering in corporate contracts and acting in accordance with their business judgment and discretion "lack the requisite 'malice' and therefore are not liable in tort." *Swager*, 77 Ill. 2d at 189, 395 N.E.2d at 927.

■ We conclude the policies underlying a privilege in those cases apply where a corporate director authorizes conversion of a chattel subject to a corporate contract for benefit of the corporation. Where the creditor's dispute is with the corporation for breach of contract, to allow corporate officers and directors to be sued and to be personally liable in tort would chill corporate officials from performing their duties and would be contrary to the limited liability accorded incorporation. See generally *Hern v. Bankers Life Casualty Co.*, 133 F. Supp. 2d 1130, 1139 (D. Minn. 2001). Further, corporate officers and directors are not generally liable for corporate debts. *Ted Harrison Oil Co. v. Dokka*, 247 Ill. App. 3d 791, 794, 617 N.E.2d 898, 901 (1993). Similar to the contractual-interference cases, holding an officer or director liable for conversion of a chattel subject to a contract would impose liability for corporate debts under the contract. We therefore find Russell's actions in this case were conditionally privileged. A contrary result would require corporate officials to predict whether a party might bring any number of breach-of-contract actions as a tort claim. The danger of personal liability would create great hesitancy to act, even if in the best interests of the corporation.

Having determined Russell's actions were privileged, IOS must show Russell either acted without justification or maliciously. *H.F. Philipsborn & Co.*, 59 Ill. 2d at 474, 322 N.E.2d at 50; see also *HPI Health Care Services, Inc.*, 131 Ill. 2d at 158-59, 545 N.E.2d at 678 (a person or entity holding the privilege would not be justified in acting solely for self-benefit or solely to harm the contract creditor because such action would not be in the best interests of the corporation). This it failed to do. IOS fails to point to, nor can we find, any evidence in the record showing Russell acted in any manner outside the scope of his business judgment or intended by his acts to purposefully harm IOS.

The record does show Russell told Legener to attempt to return the copiers up until the point Russell met with his attorneys. This conclusion is supported by Legener, IOS's own witness. Russell's attorneys advised him to retain the copiers for evidentiary purposes because a question existed whether IOS had breached the contract by failing to provide maintenance and support to keep the copiers in proper working order. Plaintiff presented no evidence to the contrary.

Notwithstanding Colortech's failure to pay rent for the copiers, because a dispute existed as to whether the copiers were operable and whether IOS had breached its contractual obligations, Russell's decision to retain the copiers was within the scope of his authority and business judgment. He was entitled to conclude retaining the copiers, on advice of counsel, was in the best interests of Colortech.

## C. Acting Pursuant to Advice of Counsel

■ Moreover, the record shows Russell relied solely on the advice of legal counsel regarding a substantial legal problem, such that he needed the advice to resolve it. An officer or director of a corporation should not be held liable for the performance of his duties if performed in good faith and in a manner he reasonably believes to be in the best interests of the corporation. See *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1015, 636 N.E.2d 616, 621 (1993). The reasonableness of acting on advice of legal counsel applies in the corporate context as in other areas of the law. While an officer or director may not blindly accept counsel's advice to avoid liability, he may rely on such advice when he does not have knowledge of his actions causing such reliance to be unwarranted. See *Jewish Hospital of St. Louis, Missouri v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 768, 633 N.E.2d 1267, 1281 (1994) (bank had a right to rely on attorney's advice in administration of estate unless it knowingly chose incompetent counsel or had reason to know the advice given was not sound); see also *Roy v. Coyne*, 259 Ill. App. 3d 269, 284, 630 N.E.2d 1024, 1034 (1994) (party claiming affirmative defense of justification may be able to base claim on advice of counsel).

Here, Russell was not an attorney, nor was he actively involved in the business of Colortech. The only evidence at trial showed he consistently directed Legener to turn over the copiers until the point at which IOS brought suit. He then consulted legal counsel, who advised him not to turn over the copiers until a third-party examination could be conducted to determine whether any evidence supported a defense to IOS's breach-of-contract claim or a potential breach-of-contract/defective-product counterclaim by Colortech. The record gives no indication Russell had any reason to believe the advice given was not sound. Accordingly, he was entitled to rely on counsel's advice in directing Colortech to retain the copiers.

Because we find Russell's actions were privileged in authorizing the conversion of the copiers and he was entitled to rely on the advice of counsel under the circumstances, we need not decide the other issues raised by the parties.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

KNECHT, P.J., concurs.

JUSTICE COOK, specially concurring:

I concur in the decision to reverse.

*National Acceptance* is a troublesome case. *National Acceptance* recognizes the general rule, that "[o]ne of the purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf." *National Acceptance*, 94 Ill. App. 3d at 706, 418 N.E.2d at 1116-17. That rule is not just a sidelight. The rule is essential and goes to the very reason for the existence of corporations. "Accordingly, in most instances, the law immunizes corporate officers from corporate liabilities and debts." *People ex rel. Madigan v. Tang*, 346 Ill. App. 3d 277, 284 (2004). *National Acceptance* went on to recognize the exception where the officer actively participates in a tort. "[A]lthough the officer is not liable for the corporation's torts simply by virtue of his office, corporate[-] officer status does not insulate him from individual liability for the torts of the corporation in which he actively participates." *National Acceptance*, 94 Ill. App. 3d at 706, 418 N.E.2d at 1117.

Conversion and breach of contract are often pleaded interchangeably, but some distinction must be recognized, otherwise individual responsibility may be imposed, not just for participation in torts of the corporation, but for breaches of contract. Language in *National Acceptance*, however, seems to disagree with that proposition. "Notwithstanding the law in other [s]tates, we must disagree" with "the proposition that a corporate officer's liability for conversion requires proof of personal benefit in addition to active participation in the conversion." *National Acceptance*, 94 Ill. App. 3d at 706, 418 N.E.2d at 1117. "We therefore hold that a corporate officer's individual liability for conversion committed by him personally in behalf of the corporation is established in the same manner as his liability for any other tort[:] by proof of active participation in the conversion." *National Acceptance*, 94 Ill. App. 3d at 707, 418 N.E.2d at 1117. *National Acceptance* was indifferent to the argument that it was circumventing the general rule that a corporate officer is not individually liable on a contract entered into by him for a corporation. "Such may be the ef-

fect, but that is the rule in conversion." *National Acceptance*, 94 Ill. App. 3d at 707, 418 N.E.2d at 1117.

If *National Acceptance* holds that every breach of contract can be labeled a tortious conversion and thereby result in individual liability of corporate officers, I disagree with that holding. On its facts, however, *National Acceptance* does not so hold. In *National Acceptance*, 94 Ill. App. 3d at 705, 418 N.E.2d at 116, the corporation, Pintura, assigned monies due from Highland, for which it performed work, to Wille, a supplier. When the checks were received, however, Pintura's president deposited them in a Pintura account.

This fact situation is similar to that described in a Georgia federal case:

> "Georgia's conversion law does not transform every breach of a contractual obligation to pay money into a tort, comprised of withholding funds and exercising dominion over them. Those cases cited by [the plaintiff] in support of its conversion argument are clearly distinguishable on their facts from the present case. In each case, funds held by the defendant *for a particular purpose* were misappropriated, thereby visiting an independent, noncontractual injury on the plaintiff." (Emphasis added.) *LaRoche Industries, Inc. v. AIG Risk Management, Inc.*, 959 F.2d 189, 191 (11th Cir. 1992) (determining whether punitive damages could be imposed).

In *National Acceptance*, applying the *LaRoche* analysis, there was not simply a failure to pay a debt. Rather, funds held for a particular purpose were misappropriated, thereby giving rise to conversion. The present case, however, is simply the failure to pay a debt. The fact that the copiers were not sold but were leased is not significant. This was a commercial situation where the rights of the parties were based on contract. A simple breach of contract is not conversion for purposes of imposing personal liability on a corporate officer. The conduct in this case did not rise to the level of tortious conduct necessary for the imposition of personal liability.