In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2102

JAMES NATION,

*Plaintiff-Appellant,*

*v.*

AMERICAN CAPITAL, LTD.,
d/b/a American Capital Strategies, Ltd.,
a Delaware corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 6917—**Matthew F. Kennelly**, *Judge.*

ARGUED DECEMBER 6, 2011—DECIDED JUNE 4, 2012

Before POSNER, FLAUM, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* For more than a decade, James Nation served as CEO of The Spring Air Company, which owned and licensed the "Spring Air" mattress brand name. Nation and Spring Air parted ways in 2007, and Nation won a generous severance package entitling him to $1.2 million in payments spread over 15 months

provided he did not work for Spring Air's competitors through December 31, 2008. Spring Air paid Nation more than $836,000 under this agreement, but in August 2008 ceased making payments due to serious liquidity problems. Spring Air never solved its cash-flow problems and ultimately filed for bankruptcy.

Nation then sued American Capital, Ltd., Spring Air's majority shareholder and primary creditor, asserting a claim for tortious interference with contract. His theory was that American Capital used its majority position on Spring Air's board of directors to induce the company to breach his severance agreement. On cross-motions for summary judgment, the district court sided with American Capital and dismissed the case. The court held that American Capital was conditionally privileged to interfere with the severance agreement based on its status as Spring Air's majority shareholder and that Nation had not presented sufficient evidence to overcome the privilege.

We affirm. Illinois law recognizes that a corporation's directors, officers, and shareholders are conditionally privileged to interfere with the corporation's contracts. The privilege is an aspect of the business-judgment rule, and it applies here. Nation might have overcome the privilege if he had evidence that American Capital induced the breach of contract for the specific purpose of injuring him or to further its own personal goals and that it acted against the best interests of the corporation. He has no such evidence, however. The district court properly entered summary judgment for American Capital.

## I. Background

Nation began working for Spring Air in 1990 and was promoted to president and CEO in 1995. Spring Air owned the rights to the "Spring Air" brand name and licensed it to independently owned mattress manufacturers; it also provided marketing, merchandising, and product-development services. Over a period of years, HIG Capital acquired several Spring Air licensees. In June 2007 HIG purchased Spring Air and most of the remaining licensees to create a unified business with common ownership. American Capital financed HIG's acquisition of Spring Air and as a result acquired a minority interest in Spring Air as well as a seat on Spring Air's seven-member board of directors.[1] Shortly after HIG purchased Spring Air, Nation was replaced as president and CEO. He received a generous severance that entitled him to a series of payments totaling $1,243,140 in exchange for his agreement not to compete with Spring Air through December 31, 2008.

Spring Air faced serious financial difficulties after HIG acquired the company. In January 2008 Spring Air requested additional financing from American Capital to respond to a liquidity crisis. In February 2008 American Capital and HIG each agreed to inject $11 million into Spring Air. In connection with this cash infusion,

---

[1] The name of the parent corporation for the unified business was Consolidated Bedding, Inc., while the day-to-day operations were conducted by Spring Air. For simplicity we refer to both companies as "Spring Air."

American Capital increased its minority ownership in Spring Air and obtained two additional seats on the board of directors. Spring Air's liquidity problems continued, necessitating an additional $1.5 million from both HIG and American Capital just two months later. As the company's financial problems mounted, American Capital provided $15 million more, and by June 2008 American Capital was the majority equity holder and controlled four of the seven seats on the Spring Air board. Steve Cumbow, an executive at American Capital, was hired as Spring Air's Chief Financial Officer and later assumed the responsibilities of Chief Operating Officer. In August 2008 Cumbow and Chief Executive Officer Bob Hellyer decided to suspend Nation's severance payments, as well as the severance payments of three other former executives of the company, in order to preserve cash for operations. On September 15, 2008, Nation began working for Serta, a Spring Air competitor, in violation of his severance agreement.

Up to this point, Nation had received $836,153 in severance payments. He sued Spring Air for the balance, but in May 2009 the company filed for bankruptcy under Chapter 7. In October 2009 Nation shifted course and brought this suit against American Capital in Cook County Circuit Court alleging that it tortiously interfered with his severance contract. American Capital removed the case to federal district court based on diversity of citizenship, and the parties filed cross-motions for summary judgment. The district judge granted American Capital's motion and denied Nation's. Assuming for the sake of argument that American Capital induced

Spring Air's breach of the severance agreement, the judge held that American Capital was conditionally privileged to interfere with Nation's contract based on its status as Spring Air's majority shareholder. The judge also held that Nation had presented insufficient evidence to overcome the privilege. In the alternative, the court suggested (but did not hold) that American Capital's status as a creditor of Spring Air might serve as an additional basis for its conditional privilege to interfere with Nation's contract. Nation appealed.

## II. Discussion

On appeal Nation challenges only the district court's entry of summary judgment for American Capital; he does not argue that the court should have granted his motion. Our review is de novo. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). We construe all facts and reasonable inferences in favor of Nation, the nonmoving party. *Id.* The parties agree that Illinois law governs Nation's claim of tortious interference with contract. To prevail Nation must prove the following elements: (1) that he had a valid and enforceable contract with Spring Air; (2) that American Capital was aware of the contractual relationship; (3) that American Capital intentionally and without justification in-duced Spring Air to breach the contract; (4) that the subsequent breach was caused by American Capital; and (5) that he sustained damages. *See Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir. 1994) (applying Illinois law).

The only contested elements of the claim are whether American Capital actually interfered with Nation's severance agreement and whether the interference was unjustified. The district judge did not address the first question because he was satisfied that any interference was legally justified based on American Capital's conditional privilege to interfere with Spring Air's contracts. Although the court's ruling can be upheld on any ground adequately preserved and supported by the record, see *Stockwell v. City of Harvey*, 597 F.3d 895, 901 n.2 (7th Cir. 2010), we agree with the district court that the case can be resolved on the basis of the conditional privilege.

## A. Conditional Privilege

Illinois recognizes a conditional privilege to interfere with contracts "where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights[2]." *HPI*

---

[2] Illinois courts have been unclear about whether the issue of conditional privilege is part of the plaintiff's claim—that is, an aspect of the plaintiff's burden to prove that the defendant's interference with his contract was unjustified—or an affirmative defense to be proved by the defendant. *Compare HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989) ("In Illinois, this court has repeatedly stated that where the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and

(continued...)

*Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989). This privilege covers the acts of corporate officers, directors, and shareholders undertaken on behalf of the corporation. *See, e.g.*, *Swager v. Couri*, 395 N.E.2d 921, 928 (Ill. 1979) (recognizing privilege for corporate officers, directors, and shareholders to influence the actions of their corporation); *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 612 (Ill. App. Ct. 2004) ("Illinois courts recognize a privilege for corporate officers and directors to use their business judgment and discretion on behalf of the corporation."); *MGD, Inc. v. Dalen Trading Co.*, 596 N.E.2d 15, 18 (Ill. App. Ct. 1992) (same). The basis for the privilege is the business-judgment rule. Because the interests of corporate officers, directors, and shareholders are sufficiently aligned with those of the company, they generally cannot be liable in tort when they interfere with the company's contracts for the benefit of the company. *See IOS Capital*, 808 N.E.2d at 613 ("Corporate officers interfering in corporate contracts and acting in accordance with their business judg-

---

[2] (...continued)

prove that the defendant's conduct was unjustified or malicious."), *with Roy v. Coyne*, 630 N.E.2d 1024, 1033 (Ill. App. Ct. 1994) ("[The language in *HPI Health Care*] certainly does not foreclose the possibility that justification can be an affirmative defense . . . rather than an absence of justification being an essential element . . . ."). Nation loses in any case, either because he cannot show that American Capital's conduct was unjustified or because American Capital has demonstrated that its alleged actions were conditionally privileged.

ment and discretion 'lack the requisite "malice" and therefore are not liable in tort.' " (quoting *Swager*, 395 N.E.2d at 927)).

The conditional privilege protects both individuals and—more to the point here—entities. For instance, in *HPI Health Care* the Illinois Supreme Court held that a hospital-management company enjoyed the same privilege to interfere with the hospital's contracts as the individual corporate officers and directors. 545 N.E.2d at 677 ("As with corporate officers' and directors' duty to their shareholders, we deem that the duty owed by hospital management companies to their hospitals should take precedence over their duty to the hospitals' contract creditors.").

American Capital is analogous to the hospital-management company in *HPI Health Care.* It controlled a majority of Spring Air's board of directors and in that role had a conditional privilege to interfere with the company's contracts. And American Capital's majority equity interest in Spring Air gave it the right to lawfully influence the actions of the company in pursuit of the company's affairs. *See Langer v. Becker*, 531 N.E.2d 830, 833 (Ill. App. Ct. 1988) ("[T]he stockholders of a corporation have an interest in the corporation and the right to lawfully influence the actions of the directors of the corporation."). American Capital's multimillion-dollar investment in Spring Air gave it a legitimate interest in protecting Spring Air's value for shareholders—an interest that the law deems equal or superior to Nation's contractual rights.

Nation argues that American Capital's effective control of Spring Air is "fatal" to its claim of privilege. He notes the many ways in which American Capital was enmeshed in Spring Air's affairs, arguing that "American Capital **WAS** Spring Air." To the extent that this is true, it defeats Nation's tortious-interference claim. "It is settled law that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship." *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 681 N.E.2d 564, 567 (Ill. App. Ct. 1997); *see also Knickman v. Midland Risk Servs.-Ill., Inc.*, 700 N.E.2d 458, 462 (Ill. App. Ct. 1998) (parent company that was "alter ego" of subsidiary could not be liable for inducing breach of contract to which it was constructively a party). Nation's argument is more appropriate to a corporate veil-piercing claim than a claim of tortious interference with contract.

Apart from its status as a majority equity holder, American Capital's actions may also be privileged based on its status as a creditor of Spring Air. In *Connaughton v. Gertz*, 418 N.E.2d 858, 862 (Ill. App. Ct. 1981), the Illinois Appellate Court held that a union enjoyed a conditional privilege to induce an employer to breach the employment contracts of nonunion workers because "conflicting contractual rights stand on an equal plane." The court explained:

> [W]hen A has a valid contract with C, and C enters into a contract with B, and the enforcement of A's contract depends on the non-enforcement of B's contract, A is privileged to use any reasonable

means to bring about a breach of B's contract with C to protect his own interest.

*Id.*

Several district courts in this circuit have relied on *Connaughton* to hold that a creditor "competing for payments from the same cash-strapped debtor" can use reasonable means to obtain payment on its contract, including conduct that induces the debtor to breach its contract with another. *Interlease Aviation Investors II (ALOHA) L.L.C. v. Vanguard Airlines, Inc.*, No. 02 C 4801, 2004 WL 1149397, at *8 (N.D. Ill. May 20, 2004); *see also Miyano Mach. USA, Inc. v. Zonar*, No. 92 C 2385, 1994 WL 233649, at *5 (N.D. Ill. May 23, 1994). Here, Spring Air's liability to American Capital, its largest creditor, may provide yet another basis to hold that American Capital's interference with Nation's severance agreement was privileged. However, in light of the sparse caselaw from Illinois courts on the issue of a creditor's conditional privilege, we rest our holding on American Capital's status as Spring Air's majority shareholder with control of a majority of its directors.

### B. Overcoming the Conditional Privilege

The conditional privilege can be overcome if American Capital "induced the breach to further [its] personal goals or to injure the other party to the contract, *and* acted contrary to the best interest of the corporation." *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 866-67 (7th Cir. 2009) (quoting *George A. Fuller Co. v. Chi. Coll. of Osteopathic*

*Med.*, 719 F.2d 1326, 1333 (7th Cir. 1983)); *see also HPI Health Care*, 545 N.E.2d at 678 ("A defendant who is protected by a privilege, however, is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege."). It is Nation's burden to present evidence to overcome the privilege. *HPI Health Care*, 545 N.E.2d at 677.

He has not done so. There is no evidence suggesting that American Capital induced Spring Air's breach of Nation's severance agreement for any reason other than to protect its investment and to preserve Spring Air's value for shareholders. It is undisputed that American Capital injected millions of dollars into Spring Air and that the company faced a severe liquidity crisis. When Spring Air suspended Nation's severance pay, it also suspended severance payments to three other former executives and took additional measures to halt the company's cash-flow problems, such as deferring payments to vendors and renegotiating terms with suppliers. Indeed, in his briefs and at oral argument, Nation's counsel was unable to point to even one decision made by American Capital that was contrary to Spring Air's financial interests. Furthermore, Nation's counsel conceded at oral argument that the suspension of Nation's payments was not contrary to Spring Air's interests. Any interference with Nation's severance agreement was amply justified.

Nor does Nation have any evidence that American Capital induced the breach of his severance agreement

to injure him personally. He notes that Spring Air eventually resumed severance payments to the other executives, but that fact alone is insufficient to prove intent to injure him. The resumption of payments to the other executives occurred after Nation began working at Serta, a competitor of Spring Air, which was itself a breach of the severance agreement.

In short, the privilege issue here is straightforward. As Spring Air's majority shareholder with control of a majority of its directors, American Capital was conditionally privileged to interfere with the company's contracts, including its severance agreement with Nation. There is no evidence that would permit a reasonable jury to conclude that American Capital induced the breach of Nation's severance agreement to further its own interests or to injure him, or that doing so was contrary to Spring Air's interests. Summary judgment for American Capital was entirely appropriate.

AFFIRMED.