SANDY CREEK CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. STOLT AND EGNER, INC., *et al.*, Defendants-Appellants.

Second District   No. 2—93—1042

Opinion filed October 26, 1994.

Joseph P. Sauber, Mary Agrella Fitzpatrick, and M. Caroline Blood, all of Shearer, Blood, Agrella & Boose, of St. Charles, for appellants.

Kathleen Ross, of Barrington, for appellee.

JUSTICE PECCARELLI delivered the opinion of the court:

The defendants, Stolt & Egner, Inc., and John Stolt and Allen Egner, individually, appeal from the trial court's order which denied their post-trial motion for a judgment *n.o.v.* For the following reasons, we reverse.

In 1979, the defendant, Stolt & Egner, Inc., built the Sandy Creek Apartments in Elgin, Illinois. The complex was converted to condominiums and was managed by Stolt & Egner, Inc., from 1980 to 1990. John Stolt and Allen Egner were the sole shareholders of Stolt & Egner, Inc., and directors of the board of the Sandy Creek Condominium Association (Association). In 1990, Stolt & Egner, Inc., turned over management of the Association to the plaintiff, the Sandy Creek Condominium Association, Inc., a not-for-profit corporation organized pursuant to the Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 1992)) for the purpose of representing the interests of the owners of condominium units in the Sandy Creek Condominium development.

On March 22, 1993, plaintiff filed a third amended complaint in

13 counts against Stolt & Egner, Inc., and against John Stolt and Allen Egner, individually. Count III of the complaint, relevant to this appeal, alleged that the defendants converted assets of the Association during the time the defendants managed the Association. Specifically, plaintiff alleged that the defendants (1) retained revenue from the laundry room facility; (2) used the laundry facility for its office without paying rent to the Association; (3) failed to collect assessments on garages belonging to the Association; (4) charged the Association a greater sum of money for maintenance than was actually performed; and (5) sold property belonging to the Association without obtaining approval from the members. Count VII of the complaint, relevant to this appeal, alleged that the defendants committed fraud in making the following misrepresentations knowing them to be false or with reckless disregard of their truth or falsity: (1) the buildings were constructed in compliance with condominium plans and specifications; and (2) the buildings were constructed in a good and workmanlike manner, free from defects, and in compliance with applicable standards.

The cause proceeded to trial. On count III, which alleged conversion of assets, the jury returned a verdict in favor of plaintiff and against John Stolt and Allen Egner in the amount of $2,500. On count VII, which alleged fraud, the jury returned a verdict in favor of plaintiff and against Stolt & Egner, Inc., John Stolt, and Allen Egner, in the total amount of $120,000; $115,000 represented compensatory damages and $5,000 represented punitive damages.

The defendants filed a post-trial motion for a judgment notwithstanding the verdict or, alternatively, for a new trial with respect to counts III and VII of the complaint. The motion was denied and the defendants appealed.

Defendants first contend that the judgment *n.o.v.* on count III should have been granted because the complaint which alleged conversion is "legally and factually defective." Curiously, the defendants also state in their brief that no issue is raised on the pleadings. Since the defendants appeal the denial of their post-trial motion for a judgment *n.o.v.*, the sufficiency of the complaint is not at issue. In reviewing the propriety of a trial court's decision to deny a motion for a judgment *n.o.v.*, the appellate court must consider whether all of the evidence, when viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The defendants in this case also seek a new trial on count III. A trial court should set aside a verdict and grant a new trial only if the

verdict is contrary to the manifest weight of the evidence. (*Pedrick*, 37 Ill. 2d at 509.) A verdict will be deemed to be against the manifest weight of the evidence if it is palpably erroneous and wholly unwarranted, the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based on the evidence. *Doyle v. White Metal Rolling & Stamping Corp.* (1993), 249 Ill. App. 3d 370, 380.

Defendants contend that the motion for a judgment *n.o.v.* should have been granted because the evidence presented in support of the allegations of conversion do not relate to personal property, which is an essential element of the cause of action of conversion. Thus, the defendants' contention on appeal, if properly phrased, is that the evidence presented in support of the plaintiff's claim for conversion so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. Alternatively, the defendants assert that the verdict in favor of the plaintiff on count III of the complaint which alleged conversion is against the manifest weight of the evidence.

■ ■ Conversion is the unauthorized deprivation of property from the person entitled to its possession. (*In re Rosin* (1993), 156 Ill. 2d 202, 206.) To sustain a cause of action for conversion of funds, the plaintiff must establish by a preponderance of the evidence: (1) the unauthorized and wrongful assumption of control, dominion, or ownership by defendant over the personal property of another; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property. (*Seymour v. Williams* (1993), 249 Ill. App. 3d 264, 272; *Rasmussen v. LaMagdelaine* (1991), 208 Ill. App. 3d 95, 102.) Money may be the subject of conversion if the sum of money is capable of being described as a specific chattel. (*In re Thebus* (1985), 108 Ill. 2d 255, 260.) However, an action for the conversion of funds may not be maintained to satisfy an obligation to pay an indeterminate sum of money. If such is the case, the cause of action lies in debt, rather than conversion. *Sutherland v. O'Malley* (7th Cir. 1989), 882 F.2d 1196.

In *Thebus*, the Attorney Registration and Disciplinary Commission (ARDC) charged the respondent with conversion in that he allegedly withheld funds from his employees' wages to pay their FICA and failed to remit the amount to the IRS. While the respondent was censured for his conduct, our supreme court ruled that the ARDC failed to show that the defendant's conduct constituted a conversion of government funds. The amount that accrued with each pay period was not a specific and identifiable fund capable of being the subject of

conversion. Rather, the defendant's obligation was a debt to the government. *Thebus*, 108 Ill. 2d at 262-63.

■ In the instant case, plaintiff alleged that the defendants converted funds belonging to the Association. Francis J. Jara, a professional community association manager and certified public accountant, reviewed the Association records. Mr. Jara testified that the defendants owed the Association various sums of money for garage assessments, maintenance fees, laundry revenues, rent for utilizing the laundry room as an office, and for real property sold belonging to the Association. He estimated the amount of money due and owing based on both the Association records and on his expert opinion.

Our review of the evidence clearly indicates mismanagement of the Association funds by the defendants. However, the evidence that the defendants sold real property belonging to the Association does not sustain a cause of action for conversion, since these items are real property. Similarly, evidence that the defendants failed to collect assessments on the garages, overcharged for maintenance, and failed to pay rent for use of the laundry facility does not constitute conversion. Mr. Jara's testimony concerning the sums of money due and owing to plaintiff for these items was speculative and based upon his opinion of the value of these items. In our view, there was insufficient evidence that the defendants exercised control over a specific and identifiable sum of money belonging to plaintiff.

The sole evidence that could possibly constitute conversion is in Mr. Jara's testimony that the Association records indicate that the defendants pocketed revenue from the laundry facility. Mr. Jara testified that the Association was required to pay the laundry leasing company biannually. After reviewing the records, Mr. Jara testified that the payments from the Association to the leasing company were not consistent. When questioned where the money was, Mr. Jara stated that he "assumed" it was still in the possession of the defendants. Further, Mr. Jara testified that Association records failed to show any checks for revenue rendered by the laundry leasing company. Although Mr. Jara admitted that there was never an accounting from the defendants on the laundry room revenues and disbursements, he opined that the defendants kept $9,160.54 of revenue from the laundry facility.

The evidence to support a conversion of laundry room revenue was based on an estimated calculation of the debt and not on concrete evidence. To sustain a cause of action for conversion, the plaintiff must prove by a preponderance of the evidence that the money claimed at all times belonged to the plaintiff and that the defendant

converted it for his own use. As in *Thebus*, the amounts of money allegedly due and owing to the plaintiff accrued as time passed but were not sufficiently specific and identifiable to be the subject of conversion. After reviewing all of the evidence in the light most favorable to the plaintiff, we determine that the evidence so overwhelmingly favors the defendants that the judgment in favor of the plaintiff for conversion cannot stand. Therefore, we determine that the trial court erred in denying the defendants' motion for a judgment *n.o.v.* on count III of the plaintiff's complaint which alleged conversion.

■ The defendants next contend that the plaintiff lacked standing to bring count VII of the complaint which alleged fraud. We disagree.

The affairs of the Association are statutorily controlled by the Act (765 ILCS 605/1 *et seq.* (West 1992)). Section 9.1 of the Act specifically states that "[t]he board of managers [of a condominium association] shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." (765 ILCS 605/9.1(b) (West 1992).) In its complaint, the plaintiff alleged that the defendants fraudulently misrepresented to unit owners that the buildings were constructed in substantial compliance with condominium plans and that the buildings were constructed in a good and workmanlike manner and free from defects. Although not all unit owners were affected by the allegedly fraudulent statements of the defendants, the Act statutorily grants the Association standing to bring an action if more than one unit is affected. The historical and practice notes which accompany section 9.1 of the Act state that a condominium board's standing to sue for construction defects has been broadly interpreted by the appellate court and that the Act was amended by the legislature to clarify that boards have standing to sue on all matters affecting more than one unit. (765 ILCS 605/9.1, Historical & Practice Notes, at 56-57 (Smith-Hurd 1993).) Therefore, we determine that the Association has standing to bring count VII of the complaint which alleges fraud.

Defendants next assert that the jury's verdict in favor of the plaintiff on count VII of the complaint, which alleged fraud, is against the manifest weight of the evidence. The defendants specifically assert that plaintiff failed to prove that they misrepresented that the condominiums were constructed in substantial compliance with condominium plans and that the buildings were constructed in a good and workmanlike manner and free from defects.

■ To prevail on a claim for common-law fraud, a plaintiff must prove, by clear and convincing evidence, that (1) the defendant made

a false statement of material fact, knowing or believing the statement to be untrue; (2) the party to whom the statement was made was justified in relying on the statement; (3) the party to whom the statement was made did rely on the statement; (4) the statement was made for the purpose of inducing the other party to act; and (5) the reliance by the person to whom the statement was made led to that person's injury. *Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 542-43.

To prove that the defendants made false and misleading statements regarding the condition of the property and that purchasers relied on those statements, the plaintiff presented the testimony of Gwyndolyn Snowwhite, a condominium owner. The following discourse transpired on direct examination:

"Q. [by Ms. Ross, counsel for the plaintiff]: Did you talk to Stolt and Egner before you purchased your unit?

A. [by Ms. Snowwhite]: Yes. I think the best way I could answer your question is to say that they had a very elaborate display and sales office there that quite impressed me. There were architectural drawings on the wall that showed the complex as it was at that time and it is currently.

In addition to that, it showed the proposed swimming pool, tennis court areas with a clubhouse. And also, they planned in the future to extend the buildings to the south on the vacant property there.

Q. Were the elaborate displays that you saw in the Stolt and Egner sales office any of the reasons why you purchased the property?

A. Yes. I was concerned with it being a condo and so many units together that—well, the noise factor and that type of thing, because I was at the time looking for a single unit ranch-type of home.

But they had, I guess you would call it, a mockup. It showed the cement floor between each unit with a flooring, the studs, the drywall. It was a—quite a large piece of, like I say, mockup. It was on the—on the floor there in the sales room. And it looked quite substantial.

Q. And these—you saw these mockups and displays before you purchased your unit?

A. Several times, because I went back several times to make sure this was what I wanted.

Q. You—did you ever talk before you purchased your unit to Stolt and Egner?

A. I don't believe I did, no.

Q. Only to their salesman, Mr. Durant?

A. Right."

Ms. Snowwhite later testified that Mr. Durant stated that the complex, as shown in the display, would have a recreation room, tennis courts, and a swimming pool. However, the swimming pool and recreation area were never completed.

■ In our view, plaintiff failed to prove, by clear and convincing evidence, that the defendants made misrepresentations regarding the condition of the property and that the plaintiff relied on those misrepresentations to its detriment. The plaintiff asserts that the displays and models Ms. Snowwhite and other buyers observed implicitly conveyed to prospective purchasers that the property would be constructed in a workmanlike manner and free from defects. However, at no time did Ms. Snowwhite or any other witness testify that the defendants or their agent made affirmative statements concerning the workmanlike construction of the condominium complex. Ms. Snowwhite testified that she was dissatisfied with the property because of the management and because the swimming pool, tennis courts, storage areas, and recreation room were never completed. However, she did not testify that she relied on statements concerning the structural condition of the property in purchasing her units. Assuming *arguendo* the sales display conveyed expectations regarding the structural condition of the property, statements which are a recommendation of one's product are not representations of fact, but are statements of opinion or value by the seller and do not constitute fraud. *People ex rel. Peters v. Murphy-Knight* (1993), 248 Ill. App. 3d 382, 388.

The plaintiff asserts in its brief that the defendants intentionally concealed the defective condition of the property. The concealment or suppression of material facts can constitute fraud. (*Connor v. Merrill Lynch Realty, Inc.* (1991), 220 Ill. App. 3d 522.) However, a seller's silence, standing alone, does not give rise to a cause of action for misrepresentation. (*Dee v. Peters* (1992), 227 Ill. App. 3d 1030, 1032.) Silence must be combined with active concealment with the intent to defraud. (*Mitchell v. Skubiak* (1993), 248 Ill. App. 3d 1000, 1005.) In the instant case, there was no evidence that the defendants knew of a defect in the property or that they intentionally concealed it to induce sale. A buyer's assumption that new construction will be free from defects is insufficient evidence of fraudulent concealment. Further, the plaintiff failed to allege intentional concealment in its complaint and did not seek to amend the complaint to conform with the proofs. For these reasons, we determine that the judgment in favor of the plaintiff on count VII of the complaint for fraud was against the manifest weight of the evidence.

For the foregoing reasons, we reverse the judgment of the circuit court of Kane County and remand the case to the circuit court of Kane County to enter judgment for the defendants.

Reversed and remanded with directions.

INGLIS, P.J., and McLAREN, J., concur.