In the

# United States Court of Appeals

## For the Seventh Circuit

————————————

No. 16-1868

ALLIED PROPERTY & CASUALTY INSURANCE COMPANY, et al.,

*Plaintiffs-Appellees*,

*v.*

METRO NORTH CONDOMINIUM ASSOCIATION,

*Defendant-Appellant*.

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-03925 — **Jorge L. Alonso**, *Judge*.

————————————

ARGUED OCTOBER 27, 2016 — DECIDED MARCH 8, 2017

————————————

Before WOOD, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

MANION, *Circuit Judge*. Allied Property and Casualty Insurance Company issued a commercial general liability policy insuring a subcontractor who worked on a multi-unit residential property owned by Metro North Condominium Association. In 2006 the Metro North property sustained extensive water damage caused by the subcontractor's defective window installation. Metro North and the subcontractor

reached a settlement in which the subcontractor assigned to Metro North its right to any insurance proceeds covering the damage. The subcontractor's insurers (Allied and another insurer named AMCO) then filed this declaratory judgment action seeking a declaration that they were not required to cover the losses claimed in the settlement. The district court found for the insurers, and Metro North appeals. We affirm.

## I. BACKGROUND

Over ten years ago, Metro North Condominium Association hired a developer to build a condominium in Chicago. The developer used two subcontractors, CSC Glass and CSC Construction (collectively called CSC), to install the building's windows. CSC installed the windows defectively, and as a result the building sustained significant water damage following a rain storm in October 2006. The condominium unit owners also incurred personal-property damage.

In 2009 Metro North sued the developer in Illinois state court for more than $5 million in damages. The developer apparently turned out to be insolvent, and in 2013 Metro North filed a fourth amended complaint that added a claim against CSC for breach of the implied warranty of habitability.[1] Metro North also brought a negligence claim against CSC, but that claim was dismissed with prejudice because it was filed after the statute of limitations had expired.

---

[1] Ordinarily the implied warranty of habitability does not apply to subcontractors like CSC, but Illinois courts have recognized an exception when the developer is insolvent. *Minton v. Richards Grp. of Chic.*, 452 N.E.2d 835, 837 (Ill App. Ct. 1983).

In 2015 Metro North and CSC reached a settlement in which Metro North dismissed its pending lawsuit. In exchange, CSC assigned to Metro North CSC's rights to payment, if any, of up to $700,000 of insurance coverage from Allied Property & Casualty Insurance Company ("Allied"). The settlement specified that the right to payment had to "aris[e] out of the claims asserted against CSC in the [underlying Illinois] Action or this Settlement thereof." At the time of the settlement, the only pending claim against CSC in the underlying lawsuit was Metro North's claim for breach of the implied warranty of habitability. The settlement further specified that it was not intended to compensate Metro North for the cost of repairing or replacing CSC's defectively installed windows, but rather for the resultant damage to the remaining parts of Metro North's condominium and to the unit owners' personal property.

Allied insured CSC under a standard commercial general liability policy (CGL policy) effective from March 2006 to March 2007.[2] The policy required Allied to pay CSC for any covered property damage for which CSC became liable: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy also contained a number of exclusions identifying damages for which there was no coverage. For instance, several provisions (collectively referred to here as the "your work" exclusions),

---

[2] During that time, CSC also had coverage through an umbrella policy issued by AMCO Insurance Company. The relevant terms of the AMCO and Allied policies are materially the same, so we (like the parties) will simply refer to Allied's policy for the remainder of our discussion.

excluded coverage for damage to the particular part of the relevant property worked on by CSC, or for the cost of repairing or replacing CSC's own defective work. Under Exclusion 2.b, the policy also excluded coverage for damages arising from "contractual liability," that is, damages that CSC became obligated to pay "by reason of the assumption of liability in a contract or agreement." This exclusion applied only if CSC would not have been liable "in the absence of the contract or agreement."

When Allied learned of CSC's settlement, it brought this diversity action against Metro North in federal court, seeking a declaratory judgment that it was not liable for the damages claimed in the settlement. Metro North filed a cross-motion for summary judgment to the contrary. In 2016 the district court entered an order denying Metro North's cross-motion and granting summary judgment for Allied, finding that the settlement damages were not covered under Allied's policy. Metro appeals.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences "in favor of the party against whom the motion under consideration was made." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). Summary judgment is required if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree that this dispute is governed by Illinois law. See *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010). In Illinois, an insurer has a

duty to indemnify "when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy." *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001). "Once the insured has incurred liability as a result of the underlying claim, an insurer's duty to indemnify arises only if 'the insured's activity and the resulting loss or damage *actually* fall within the CGL policy's coverage.'" *Id.* at 492. The duty to indemnify is significantly narrower than the duty to defend, which applies "if the complaint alleges facts that are even potentially within the coverage of the insurance policy." *Ohio Cas. Ins. Co. v. Bazzi Constr. Co.*, 815 F.2d 1146, 1147 (7th Cir. 1987). The construction of a CGL policy is a question of law. See *CMK Dev. Corp. v. W. Bend Mut. Ins. Co.*, 917 N.E.2d 1155, 1162 (Ill. App. Ct. 2009).

The question in this appeal is whether Allied's policy requires it to indemnify CSC (and hence CSC's assignee, Metro North) for the damages claimed in CSC's settlement. Allied has a duty to indemnify only if the damages stemming from the underlying claim that resulted in liability actually fall within the policy's coverage. See *Eljer Mfg.*, 757 N.E.2d at 492. According to the settlement, Metro North's claim for breach of the implied warranty of habitability is the only claim giving rise to CSC's liability. Thus, Allied is liable only if the legally recoverable damages stemming from that claim are covered by the policy. We agree with the district court that they are not.

The measure of damages for a breach of the implied warranty of habitability is the cost of repairing the "defective conditions," here the defectively installed windows. See *Park v. Sohn*, 433 N.E.2d 651, 657 (Ill. 1982); *Hills of Palos Condo. Ass'n, Inc. v. I-Del, Inc.*, 626 N.E.2d 1311, 1330 (Ill. App. Ct. 1993). But

Illinois courts have concluded that CGL policies like Allied's do not cover the cost of repairing the insured's defectively completed work. See *Pekin v. Richard Marker Assocs., Inc.*, 682 N.E.2d 362, 365 (Ill. App. Ct. 1997) (CGL policies are "not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses"); *Bazzi*, 815 F.2d at 1148 (collecting cases). That conclusion is certainly true here, where the "your work" exclusions of Allied's policy specifically exclude the cost of repairing CSC's defective work.[3] What is more, notwithstanding the limited recovery available for breach of the implied warranty of habitability, the settlement indicates (ironically) that Metro North was not seeking the cost of repairing CSC's defectively installed windows, a point that Metro North also concedes on appeal.

Although the precise labeling of the claim against the insured is not dispositive when determining coverage, coverage must still be consistent with some viable theory of recovery before a duty to indemnify can arise. See *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 613 (7th Cir. 2010) ("Although we focus on factual allegations above legal theories, 'factual allegations are only important insofar as they point to a the-

---

[3] Even apart from those exclusions, claims based on the implied warranty of habitability are contract claims that are not covered by standard CGL policies. See *933 Van Buren Condo. Ass'n v. W. Van Buren, LLC*, 61 N.E.3d 929, 945 (Ill App. Ct. 2016) (claim for breach of the implied warranty of habitability is a contract claim, not a tort claim); *Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 8–9 (Ill. App. Ct. 2005) (potential liability arising from breach-of-contract claims against insured did not fall within coverage of policy and did not trigger duty to defend).

ory of recovery.'"); *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 696 (7th Cir. 2009); *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 932 (Ill. 1991) (noting that the duty to defend arises when a "theory of recovery alleges potential coverage"). See also *William J. Templeman Co. v. Liberty Mut. Ins. Co.*, 735 N.E.2d 669, 676 (Ill. App. Ct. 2000) (explaining that coverage depends on the cause of action claiming a right to recovery; "[i]t is not sufficient that the facts alleged could have been framed in a different proceeding to cover a cause of action which would fall within the policy"). Here, breach of the implied warranty of habitability was the only legal theory in play at the time of the settlement, but that theory does not allow for the recovery of damages covered by the policy.[4]

In short, liability for the cost of remedying CSC's defectively installed windows—which is the only cost for which CSC was liable based on Metro North's only claim against it—is not covered under Allied's policy. By the settlement's own terms, then, the claimed right to payment does not "aris[e] out of the claims asserted against CSC" in the underlying lawsuit or the parties' agreement, and CSC therefore has no duty to indemnify.

---

[4] Perhaps Metro North could have established coverage based on a theory of negligence (which allows for a broader recovery), but by the time of the settlement, negligence was not a viable theory of recovery because Metro North's negligence claim had already been dismissed with prejudice as time-barred under the statute of limitations. See *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 643 (7th Cir. 2007) (in determining whether a legal claim against the insured is covered by the policy, "'it is the actual complaint, not some hypothetical version, that must be considered'").

Furthermore, even if CSC assumed liability for damages to other parts of the building besides the windows themselves, coverage for those damages would be precluded under Exclusion 2.b of the policy, since the liability would then have arisen contractually from the settlement agreement. Nor could such liability have existed under a negligence theory "in the absence of the contract or agreement" since, as mentioned earlier, Metro North's negligence claim had already been eliminated as an avenue of recovery before the settlement occurred.

Finally, we agree with the district court that Metro North lacks standing to sue on behalf of the individual unit owners for damage to their personal property. Under Illinois' Condominium Property Act, a condominium association may act in a representative capacity on behalf of the unit owners only "in relation to matters involving the common elements or more than one unit[.]" 765 Ill. Comp. Stat. 605/9.1(b); *Poulet v. H.F.O., L.L.C.*, 817 N.E.2d 1054, 1060 (Ill. App. Ct. 2004). In the settlement, Metro North claims that it is entitled to recover (in part) for the unit owners' loss of personal property resulting from water damage caused by CSC. But individual damage to the unit owners' privately-owned belongings is an individual loss that affects each owner separately; it is not a collective loss affecting multiple units or the "common elements" of the building. Cf. *Sandy Creek Condo. Ass'n v. Stolt & Egner, Inc.*, 642 N.E.2d 171, 175–76 (Ill. App. Ct. 1994) (condominium association had standing to sue developer for fraudulently misrepresenting to unit owners that the buildings as a whole were generally free of defects and constructed in substantial compliance with the condominium plans). Accordingly, to the extent the damages identified in the settlement are premised on the unit owners' loss of personal property, Metro North has

no duty to indemnify for the additional reason that the damages do not arise from a claim on which Metro North had standing to recover.

### III. CONCLUSION

In sum, the settlement damages for which CSC incurred liability do not fall within the coverage of Allied's policy. Because CSC did not become legally obligated to pay any sums to which the insurance applied, there is no duty to indemnify. The judgment of the district court in favor of the insurers is AFFIRMED.