NOTICE
Decision filed 09/11/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210381

NO. 5-21-0381

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| PATRICK J. O'MALLEY JR., as Trustee Under Trust Agreement Dated January 1, 2006, | ) ) ) | Appeal from the Circuit Court of Crawford County. |
| Plaintiff and Counterdefendant, | ) ) | |
| v. | ) ) | No. 16-CH-9 |
| MARCIA ADAMS, as Successor Trustee of the Almyra M. Prather Revocable Trust Agreement dated December 15, 1967, and Individually, and LAWRENCE P. LUBY, Executor of the Estate of Betty P. Luby, Deceased, | ) ) ) ) ) ) | |
| Defendants, Counterplaintiffs, and Third-Party Plaintiff-Appellants | ) ) ) | |
| (Bridgeview Bank Group, Third-Party Defendant-Appellee). | ) ) ) | Honorable Sonja L. Ligon, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Welch and McHaney* concurred in the judgment and opinion.

**OPINION**

¶ 1    The third-party plaintiffs, Marcia P. Adams, individually and as successor trustee of the Almyra M. Prather Revocable Trust Agreement, dated December 15, 1967, and Lawrence P. Luby, executor of the estate of Betty P. Luby, deceased, (collectively, the Prather Trust) appeal from the

_____
*Justice Wharton heard oral argument in this case. Upon Justice Wharton's retirement, Justice McHaney was substituted and has reviewed the record, briefs, and audio recording of the oral argument.

1

trial court's orders granting summary judgment for third-party defendant Bridgeview Bank Group (Bridgeview)[1] as to the Prather Trust's claim for unjust enrichment and dismissing the Prather Trust's other claims against Bridgeview pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)). We affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3     The litigation began in March 2016, when the plaintiff, Patrick O'Malley Jr., as trustee under a trust agreement dated January 1, 2006 (O'Malley Trust), filed an adverse possession action regarding farmland located in Crawford County, Illinois (Farm). At the time the suit commenced, the O'Malley Trust had title to the surface rights of the Farm, and the O'Malley Trust and the Prather Trust each held a 50% interest in the underlying mineral estate.[2] In the complaint, the O'Malley Trust claimed that it had acquired the Prather Trust's interest in the mineral estate by adverse possession. The Prather Trust filed an answer and affirmative defenses and eventually obtained a summary judgment in its favor on the O'Malley Trust's claim for adverse possession.

¶ 4     In the same case, the Prather Trust filed a counterclaim for an accounting against the O'Malley Trust and third-party claims against several defendants, including Chicago Title Insurance Company (Chicago Title) and Bridgeview. The Prather Trust alleged that since 2008 its cotenant, the O'Malley Trust, had contracted with third-party defendant Putnam Energy, LLC (Putnam), to remove and sell oil and natural gas from the mineral estate, without the knowledge or consent of the Prather Trust. The Prather Trust further alleged that third-party defendant

---

[1]During the course of this litigation, Bridgeview Bank Group merged into First Midwest Bank, and later First Midwest Bank merged into Old National Bank. As no party has been substituted, we will refer to Bridgeview Bank Group as Bridgeview in this disposition.

[2]"Mineral estate" is a generic term used herein to describe the oil, gas, and other minerals available for extraction from the land.

Chicago Title conspired to slander title to and convert the Prather's Trust's interest in the mineral estate by issuing a title policy that falsely declared that the O'Malley Trust had merchantable title to 100% of the minerals in the mineral estate. The Prather Trust's claims against third-party defendant Bridgeview were based, in part, upon Bridgeview's efforts to collect a $1.7 million judgment that Bridgeview obtained against Putnam after Putnam defaulted on a business loan. The Prather Trust alleged that Putnam extracted and sold oil and natural gas from the mineral estate and that Bridgeview wrongfully accepted proceeds from the sale of the minerals belonging to the Prather Trust to satisfy Bridgeview's judgment against Putnam.

¶ 5    This appeal involves only the claims against Bridgeview. The version of the third-party complaint at issue is titled "Verified Amendments to the Fourth Amended Counterclaim and Third-Party Complaint," and for simplicity, we will refer to it as "the third-party complaint." The third-party complaint is sprawling. It contains 74 pages of allegations, including 38 pages (174 paragraphs) of "general allegations" applicable to all parties and all counts. It also contains several hundred pages of exhibits that were attached and incorporated into the complaint. An overview of the allegations in the Prather Trust's third-party complaint follows. It is important to point out that claims by and against the counterdefendant and third parties remain at issue in the circuit court, and we caution that nothing within this disposition should be construed as a finding regarding the disputed issues in those matters.

¶ 6                     A. Allegations Regarding the Mineral Estate

¶ 7    Marcia P. Adams and Betty P. Luby[3] were successor cotrustees of the Prather Trust, a trust created by their mother, Almyra M. Prather. Prior to June 4, 1984, the Prather Trust owned a parcel of farmland in Crawford County, along with all of the minerals in and underlying the farmland.

_____

[3]During the pendency of the litigation, Betty Luby passed away, and Lawrence Luby was appointed as the executor of her estate.

On June 4, 1984, the Prather Trust executed a warranty deed, whereby it conveyed the land and one-half of all of the minerals in and underlying the Farm to Edward L. Hynes IV. The deed provided that the Prather Trust expressly reserved ownership of "one-half of all of the oil, gas and other minerals in and under said real estate" for itself. That same day, Hynes executed a warranty deed in which he conveyed his entire interest in the Farm to his trust, Trust No. 9065 dated June 1, 1984 (Trust 9065).[4] The warranty deed stated that the transfer was "subject to prior reservations of oil, gas and other minerals." Both deeds were recorded in the recorder's office in Crawford County, Illinois.

¶ 8    In June 1991, Patrick O'Malley Sr. (O'Malley) asked Crawford County Title Company, an agent of Chicago Title, to conduct a preliminary title search of the Farm. Crawford County Title conducted the search and notified O'Malley that the Prather Trust had a one-half interest in the mineral estate underlying the Farm. On June 19, 1991, O'Malley obtained a commitment for title insurance for the Farm property from Chicago Title. The commitment included a legal description of the Farm property and an exception for "the coal, oil, gas and other rights and all rights and easements in favor of the owner of the coal, oil, gas and other rights, or any other party claiming by, through or under said real estate." On July 18, 1991, Hynes assigned his beneficial interest in Trust 9065 to O'Malley.

¶ 9    In August 1991, Chicago Title issued a final title insurance policy covering the Farm to O'Malley. The title policy contained several exceptions from coverage. Special Exception 4, set forth in schedule B of the policy, excepted "all rights and easements in favor of the owner of the mineral estate or of any party claiming by, through or under said estate." The policy did not contain a specific exception for the Prather Trust's one-half interest in the mineral estate. In December

---

[4]The trustee of Trust 9065 was Standard Bank and Trust Company, formerly known as Heritage Standard Bank and Trust Company.

1991, Chicago Title issued an endorsement to the final title insurance policy, eliminating all of the general exceptions and Special Exception No. 4.

¶ 10    In October 2006, the contents of Trust 9065 were conveyed to the O'Malley Trust. In November 2006, the O'Malley Trust entered into a gas and oil lease with Putnam, a company in the business of oil and gas exploration. At that time, Putnam was owned by O'Malley's brother, Terrence O'Malley. In February 2008, Putnam requested a mineral title update from Crawford County Title. Later that month, Crawford County Title notified Putnam that the Prather Trust owned a one-half interest in the mineral estate, and Putnam notified O'Malley. On March 6, 2008, O'Malley reported the discrepancy regarding ownership of the mineral estate to Chicago Title and indicated that he intended to file a claim under his title insurance policy. On April 7, 2008, Chicago Title issued a new title insurance policy. Schedule A of the new policy included a legal description indicating that the O'Malley Trust owned the Farm property, "together with all coal, oil, gas and other minerals underlying the land."

¶ 11    In May 2008, the O'Malley Trust entered into a new gas and oil lease with Putnam. The lease contained the altered legal description of the Farm property. Under the lease, Putnam was given the right to remove and sell 100% of the natural gas and oil beneath the Farm, and the O'Malley Trust was to receive a royalty from the sale of those minerals. In September 2008, Putnam began drilling operations at the Farm. By November 2008, Putnam began selling the natural gas extracted from the Farm to LincolnLand Agri-Energy, LLC (LincolnLand).

¶ 12                    B. Allegations Regarding the Putnam Loan

¶ 13    In August 2010, Putnam obtained a $1.7 million loan from Bridgeview. Putnam executed a "Mortgage, Security Agreement, Assignment, and Financing Statement" (mortgage) to provide security for the loan. In the mortgage, Putnam pledged its oil and gas lease with the O'Malley

5

Trust and another oil and gas lease as collateral. Putnam warranted that the oil and gas leases were "valid" and "free from all encumbrances or liens whatsoever," except as may be specifically set forth in exhibit A. Exhibit A referred to the 2006 oil and gas lease between Putnam and the O'Malley Trust. The unaltered legal description of the Farm was appended to the mortgage as exhibit A-2. The mortgage was recorded in Crawford County on September 13, 2010.

¶ 14 On November 30, 2012, pursuant to Putnam's request for an extension and renewal of credit, Putnam and Bridgeview executed a modification to the mortgage. In the modified mortgage, Putnam represented that it was the owner of "100% of the working interests" in the oil and gas leases. Putnam assigned all of its interest in the oil and gas leases and easements described therein to Bridgeview and granted Bridgeview a security interest in "all of the personal property, tangible or intangible, used or obtained in connection with said real property or oil and gas leases." Putnam also assigned, transferred, and conveyed "the proceeds of all oil and gas and other minerals attributable to the interests of [Putnam] in the Collateral and hereinafter produced and marketed therefrom" until all obligations to Bridgeview were paid. The 2008 oil and gas lease between Putnam and the O'Malley Trust was identified in exhibit A of the modified mortgage. The modified mortgage was recorded in Crawford County on January 17, 2013.

¶ 15 Putnam eventually defaulted on the loan. Following the default, Bridgeview filed a motion for confession of judgment against Putnam and Terrence O'Malley in the circuit court of DuPage County. On April 16, 2014, the circuit court entered a judgment in favor of Bridgeview and against Putnam and Terrence O'Malley in the sum of $1,763,622.24, plus interest and costs. Thereafter, Bridgeview registered its judgment and began to pursue postjudgment proceedings to collect the judgment. In May 2014, Bridgeview obtained leave to issue citations to discover the assets of several individuals and entities, including Putnam and Terrence O'Malley.

6

¶ 16    On September 30, 2014, Jane Shifrin, vice president of commercial lending for Bridgeview, issued an internal memorandum to the Bridgeview Executive Loan Committee. Therein, Shifrin notified the committee that preliminary title work revealed a potential exception and reservation of mineral rights on the Farm. She noted that Putnam had been conducting mining operations on the Farm since 2008 and that the mineral rights reservation would likely become moot as the O'Malley Trust gained adverse possession of the mineral estate. On October 7, 2014, Shifrin learned that a deed had been located indicating a reserved mineral interest on the Farm. On October 19, 2014, Shifrin issued a second memorandum to the Bridgeview Executive Loan Committee in which she proposed a forbearance agreement that would require Putnam to deposit all proceeds derived from the LincolnLand sales into an account from which monthly debt service payments would be made to Bridgeview. On October 21, 2014, Robert Coble, an attorney retained by Bridgeview, issued a title opinion to Bridgeview. Coble opined that, based upon his review of the chain of title, the Prather Trust owned one-half of the mineral estate underlying the Farm.

¶ 17    Thereafter, Bridgeview's counsel drafted a joint letter of direction to LincolnLand, dated November 19, 2014. According to the draft, Terrence O'Malley, acting on behalf of Putnam, and Shifrin, acting on behalf of Bridgeview, would have certified that Bridgeview had a mortgage, collateral assignment, and security interest with regard to all of Putnam's right, title, and interest in its oil and gas lease and that the mortgage covered all sums and amounts payable, due, or to become due from LincolnLand to Putnam. The joint letter of direction, however, was never sent to LincolnLand. Terrence O'Malley did not sign the letter until January 25, 2015. He did so only after Bridgeview indicated that it would initiate foreclosure proceedings against Putnam. Bridgeview's representative did not sign the letter.

7

¶ 18    In December 2014, Bridgeview filed a citation to discover assets of LincolnLand and subsequently prepared a turnover order for the court's use. The turnover order, issued on February 13, 2015, directed LincolnLand to turn over the sum of $66,753.28 and any additional proceeds held from the sale of the minerals to satisfy the debt and obligations of the judgment debtor, Putnam. On January 27, 2015, Bridgeview filed a mortgage foreclosure action against Putnam, Terrence O'Malley, and others in the circuit court of Crawford County.

¶ 19    On March 15, 2015, Putnam filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. On March 17, 2015, Putnam filed an emergency motion for an order allowing it to use cash collateral to continue its operations and to grant Bridgeview an automatically perfected lien in all currently owned and after-acquired property and assets of Putnam. That same day, Bridgeview filed an emergency motion for the appointment of a trustee. Bridgeview asserted that Putnam conducted its business in a manner that was "either dishonest or grossly incompetent" and that Putnam's oil and gas leases were "riddled with irregularities and problems." Bridgeview noted that questions had arisen as to whether the O'Malley Trust truly owned all of the mineral rights leased to Putnam, because a deed had been located indicating the Prather Trust had reserved 50% of the mineral rights underlying the Farm for itself. Bridgeview further asserted that it did not know what, if any, interest the Prather Trust might have in the mineral rights. In an interim order, the bankruptcy court granted Putnam's motion to continue its operations but required Putnam to maintain a debtor-in-possession account and to account for all funds deposited in the account.

¶ 20    On April 30, 2015, the bankruptcy court issued a second interim order. In this order, the bankruptcy court directed LincolnLand to deliver $23,000 in prepetition funds to Putnam for placement in the debtor-in-possession account and to pay $8500 in partial protection payments to

8

Bridgeview, the latter of which was subject to disgorgement if the court determined that Bridgeview was not entitled to such payments. The bankruptcy court directed LincolnLand to continue to hold the remainder of the prepetition funds and to refrain from paying them to Putnam, Bridgeview, or any other person "until further order of this Court, or until LincolnLand receives a written direction signed by an authorized agent of both Debtor and Bridgeview" that provided instructions regarding the distribution of the remaining funds. The bankruptcy court also granted Bridgeview an automatically perfected lien in "all currently owned or hereafter acquired property and assets" of Putnam, effective as of the date of the bankruptcy petition.

¶ 21    On July 16, 2015, Putnam and Bridgeview sent a joint letter of direction to LincolnLand. Bridgeview and Putnam informed LincolnLand about the bankruptcy court's order, and they jointly directed LincolnLand to pay $17,000 to Bridgeview from prepetition funds and to deposit any remaining funds into Putnam's debtor-in-possession account. On March 15, 2016, Punam and Bridgeview sent another joint letter of direction to LincolnLand, with instructions to release $20,000 in funds that had been frozen to Bridgeview and the remainder to Putnam. Going forward, LincolnLand was to send Bridgeview $16,000 per month from the proceeds of the natural gas sales. Putnam was to receive the remainder of those proceeds.

¶ 22                                C. The Litigation

¶ 23    On March 18, 2016, the O'Malley Trust commenced the action for adverse possession against the Prather Trust. On August 7, 2017, the trial court entered summary judgment for the Prather Trust and thereby denied the O'Malley Trust's claim for adverse possession of the Prather Trust's 50% interest in the mineral estate.

¶ 24    In same case, the Prather Trust filed a counterclaim for an accounting against the O'Malley Trust. Subsequently, the Prather Trust filed third-party claims against Chicago Title, Putnam, and

9

Bridgeview, among others. As to Bridgeview, the Prather Trust brought counts alleging conversion, slander of title, and unjust enrichment and a demand for an accounting. In an order entered October 16, 2019, the trial court dismissed the Prather Trust's claims against Bridgeview for an accounting, conversion, and slander of title, with leave to amend. The trial court found that the Prather Trust had adequately stated a claim for unjust enrichment and denied Bridgeview's motion to dismiss that count.

¶ 25    On January 9, 2020, Bridgeview filed a motion for summary judgment as to the Prather Trust's remaining claim for unjust enrichment. Bridgeview initially claimed that it was entitled to a judgment as a matter of law because there was no stand-alone cause of action for unjust enrichment in Illinois. Bridgeview also claimed that it had not been unjustly enriched by the adequate protection payments ordered by the bankruptcy court or by any other payment it had received in its efforts to collect its judgment against Putnam, and it attached the supporting affidavit of John Polster, senior vice president and assistant general counsel for First Midwest Bank and former general counsel for Bridgeview.

¶ 26    On June 29, 2020, the Prather Trust filed a motion for leave to amend its third-party complaint against Bridgeview and a motion in opposition to Bridgeview's motion for summary judgment. In the motion in opposition to summary judgment, the Prather Trust argued that there were material issues of fact regarding whether Bridgeview was unjustly enriched by the monies it received from the sale of the Prather Trust's share of the mineral estate. The Prather Trust further argued that Bridgeview was unjustly enriched both before and after it learned of the Prather Trust's interests in the mineral estate and that Bridgeview did not have a superior right to the proceeds from the sale of the Prather Trust's minerals. The trial court permitted several rounds of briefing and a hearing on Bridgeview's summary judgment motion and the Prather Trust's motion to

amend. In a docket entry dated November 14, 2020, the trial court granted summary judgment in favor of Bridgeview on the unjust enrichment count. The trial court did not offer the basis for its ruling. In subsequent pleadings, however, the parties seem to agree that the trial court found that there was no stand-alone claim for unjust enrichment. In that same docket entry, the trial court allowed the Prather Trust to file amendments to the third-party complaint.

¶ 27    On December 23, 2020, the Prather Trust filed its amendments to the third-party complaint. The Prather Trust brought counts against Bridgeview for forgery under section 17-3 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/17-3 (West 2020)) (count X), mail and wire fraud under section 17-24 of the Criminal Code (720 ILCS 5/17-24 (West 2020)) (count XI), conversion (count XII), and slander of title (count XIII). The Prather Trust's claims against Bridgeview were centered on allegations that Bridgeview wrongfully accepted payments from the proceeds of the sale of minerals belonging to the Prather Trust.

¶ 28    On January 19, 2021, Bridgeview filed a motion to dismiss all counts against it for failure to state a cause of action under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)). Bridgeview argued that the forgery and mail fraud counts were fatally defective because there is no private right of action for violations of those criminal statutes. Bridgeview also argued the Prather Trust failed to allege sufficient facts to support its claims for conversion and slander of title. On July 23, 2021, the trial court issued a detailed order dismissing the Prather Trust's claims against Bridgeview with prejudice.

¶ 29    Subsequently, the Prather Trust filed a motion to reconsider the dismissal order. On October 25, 2021, the trial court denied the motion to reconsider. In its written order, the trial court made a finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that its order denying the Prather Trust's motion to reconsider and its prior order granting summary judgment

11

for Bridgeview as to the unjust enrichment claim terminated the litigation on the merits as to Bridgeview and that there was no just reason to delay an appeal of those orders.

¶ 30                                    II. ANALYSIS

¶ 31                      A. Dismissal Pursuant to Section 2-615

¶ 32    On appeal, the Prather Trust claims that the trial court erred in dismissing the Prather Trust's forgery, mail and wire fraud, conversion, and slander of title claims for failure to state a cause of action under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)). A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint based upon defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In ruling on a section 2-615 motion, the trial court considers whether the factual allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a claim upon which relief can be granted. *Marshall*, 222 Ill. 2d at 429. A section 2-615 motion to dismiss admits all well-pleaded facts and all reasonable inferences drawn therefrom. *Marshall*, 222 Ill. 2d at 429. A complaint should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to relief. *Marshall*, 222 Ill. 2d at 429. An order granting a section 2-615 motion is subject to *de novo* review. *Marshall*, 222 Ill. 2d at 429. Under this standard, the appellate court reviews the trial court's judgment, not its rationale, and it may affirm the judgment on any basis supported by the record, regardless of the trial court's reasoning. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 30.

¶ 33                      1. Forgery and Mail/Wire Fraud

¶ 34    Initially, we consider whether the trial court erred in dismissing the Prather Trust's claims for forgery and mail and wire fraud. The Prather Trust sought compensatory and punitive damages for Bridgeview's alleged violations of a criminal forgery statute (720 ILCS 5/17-3 (West 2020))

12

(count X) and a criminal mail and wire fraud statute (720 ILCS 5/17-24 (West 2020)) (count XI). Bridgeview argued that those counts should be dismissed for failure to state a claim under section 2-615 because there is no private right of action for a violation of the Criminal Code. In response, the Prather Trust argued that a private right of action may be implied under section 17-3 and section 17-24 of the Criminal Code.

¶ 35    The Illinois Supreme Court has identified four factors to consider when determining whether a private right of action under a statute may be implied. *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill. 2d 302, 308 (1992). An implied private right of action under a statute may be appropriate if (1) the plaintiff is a member of the class for whose benefit the statute was enacted, (2) a private right of action is consistent with the underlying purpose of the statute, (3) the plaintiff's injury is one the statute was designed to prevent, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. See *Rodgers*, 149 Ill. 2d at 308; *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 391 (1982). Applying these factors in the case at bar, we consider whether there is an implied private right of action under either section 17-3 or section 17-24 of the Criminal Code.

¶ 36    Section 1-2 of the Criminal Code states that its provisions are to be construed in accordance with the general purposes of the Criminal Code. 720 ILCS 5/1-2 (West 2020). Section 1-2 lists those general purposes as follows:

> "(a) Forbid and prevent the commission of offenses;
>
> (b) Define adequately the act and mental state which constitute each offense, and limit the condemnation of conduct as criminal when it is without fault;

(c) Prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders;

(d) Prevent arbitrary or oppressive treatment of persons accused or convicted of offenses." 720 ILCS 5/1-2 (West 2020).

¶ 37     Section 1-4 of the Criminal Code expressly preserves civil remedies. 720 ILCS 5/1-4 (West 2020). It does not "bar, suspend, or otherwise affect any right or liability to damages, penalty, forfeiture, or other remedy authorized by law to be recovered or enforced in a civil action" for conduct the Criminal Code makes punishable, and the civil injury is not merged into the offense. 720 ILCS 5/1-4 (West 2020). "Hence, by explicitly preserving complementary civil causes of action and stating a civil injury is separate from the criminal offense, the Criminal Code is clear that no private causes of action are contained therein." *Walsh v. State*, 60 Ill. Ct. Cl. 238, 240 (2008).

¶ 38     Section 17-3 and section 17-24 are contained in the Criminal Code. 720 ILCS 5/17-3, 17-24 (West 2020). Section 17-3 makes it unlawful to commit forgery with intent to defraud and sets forth the elements of the offense and the classification for purposes of sentencing. 720 ILCS 5/17-3 (West 2020). Section 17-24 makes it unlawful to commit mail fraud or wire fraud and sets forth the elements of the offense and the classification for purposes of sentencing. 720 ILCS 5/17-24 (West 2020). Neither section 17-3 nor section 17-24 expressly provides a private remedy for violations of its provisions. As noted above, the intended purposes of the Criminal Code, including these sections, are to forbid and prevent the commission of criminal conduct, to adequately define the act and mental state constituting the offense, and to provide for proportionate penalties and rehabilitation for those who commit criminal acts. 720 ILCS 5/1-4 (West 2020). The focus is on

the prosecution and punishment/rehabilitation of those who violate the criminal statutes of Illinois. Section 17-3 and section 17-4 protect the public in general and not any particular class of individuals. In addition, implying a private right of action is unnecessary because there are civil causes of action available to redress fraudulent conduct in Illinois. After considering the factors set out in *Rodgers*, we conclude that there is no implied private cause of action for damages in section 17-3 or section 17-24 of the Criminal Code. The trial court did not err in dismissing count X and count XI for failure to state a claim upon which relief can be granted.

¶ 39                                  2. Conversion

¶ 40    Next, we consider whether the trial court erred in dismissing the Prather Trust's conversion count (count XII) against Bridgeview for failure to state a cause of action. Conversion is the unauthorized deprivation of property from the person entitled to its possession. *Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 294 (1994). To state a cause of action for conversion, a plaintiff must allege that (1) the plaintiff has a right to the property at issue; (2) the plaintiff has an absolute and unconditional right to the immediate possession of the property; (3) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property; and (4) the plaintiff made a demand for the return of the property. *Sandy Creek*, 267 Ill. App. 3d at 294.

¶ 41    In this case, the Prather Trust did not allege that Bridgeview participated in the extraction of the oil and gas from the Farm's mineral estate. It did not allege that Bridgeview assumed control over and sold the oil and gas after those minerals were extracted. The Prather Trust alleged that it had a 50% interest in the mineral estate underlying the Farm and that it was entitled to one-half of the proceeds obtained from the sale of the oil and gas extracted therefrom. The Prather Trust further alleged upon information and belief that, without its knowledge or consent, Putnam extracted oil

15

and gas from the Farm's mineral estate and transferred it to LincolnLand in exchange for a monetary payment and that Bridgeview wrongfully accepted proceeds from the sale of those minerals, with knowledge that a portion of the proceeds belonged to the Prather Trust. In the general allegations, however, the Prather Trust asserted that these allegedly improper payments to Bridgeview were made pursuant to a turnover order issued by an Illinois circuit court and orders of the bankruptcy court approving certain protection payments. The Prather Trust's general allegations also indicated that the bankruptcy court granted Bridgeview a protected lien in property and assets owned by Putnam as of the date the bankruptcy petition was filed. An act that would otherwise constitute a conversion is privileged when done pursuant to a valid court order. See *Mid-America Fire & Marine Insurance Co. v. Middleton*, 127 Ill. App. 3d 887, 892 (1984) (citing Restatement (Second) of Torts § 266 (1965)). Thus, we find that the Prather Trust's allegations are insufficient to establish the third element of conversion against Bridgeview. Therefore, the trial court did not err in dismissing the conversion count against Bridgeview for failure to state a cause of action.

¶ 42                                3. Slander of Title

¶ 43     The Prather Trust next claims that the trial court erred in dismissing its slander of title claim (count XIII) against Bridgeview. To state a cause of action for slander of title, a plaintiff must allege that (1) the defendant made a false and malicious publication, (2) the publication disparaged the plaintiff's title to property, and (3) the publication caused damages to the plaintiff. *Bozek v. Bank of America, N.A.*, 2021 IL App (1st) 191978, ¶ 87. To establish malice, a plaintiff must show that the defendant knew the disparaging statements were false or that the statements were made with a reckless disregard for their truth or falsity. *Roy Zenere Trucking & Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, ¶ 49. If a party has reasonable grounds to believe that he had

16

legal or equitable title or even a claim, then the assertion of this claim does not constitute slander of title. *Roy Zenere Trucking*, 2016 IL App (3d) 140946, ¶ 49.

¶ 44    In count XIII of the third-party complaint, the Prather Trust alleged that Bridgeview knowingly published documents falsely indicating that Bridgeview had a lien on the Prather Trust's portion of the mineral estate and thereby disparaged the Prather Trust's title to such property. In count XIII, the Prather Trust did not identify specific documents in which Bridgeview criticized or demeaned the Prather Trust's interest in the mineral estate on the Farm. Instead, the Prather Trust referred to "the documents in Count X" and "various documents" that Bridgeview filed in the bankruptcy proceeding. Illinois is a fact-pleading jurisdiction. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). A plaintiff cannot rely upon mere conclusions of law or fact unsupported by specific factual allegations. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996). A plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted. *Beahringer*, 204 Ill. 2d at 369. Count XIII provides no specific and coherent factual allegations that any publication by Bridgeview was false or malicious. The Prather Trust's vague references to "documents in count X" and "various documents" filed in a bankruptcy proceeding are insufficient to state a cause of action and warrant the grant of Bridgeview's motion to dismiss.

¶ 45    Although not specifically alleged in its third-party complaint, in other oral and written submissions in the trial court and on appeal, the Prather Trust did argue that the following documents constituted false and malicious publications that clouded its interest in the mineral estate: three internal memos, authored by Jane Shifrin, Bridgeview's vice president of commercial lending (the Shifrin memos); a "turnover order" dated February 15, 2015; and three letters of direction. The Shifrin memos were internal corporate communications that were disseminated only to the Bridgeview Executive Loan Committee. There is no allegation that those memos were

17

published to anyone outside of Bridgeview. The turnover order, dated February 15, 2015, was issued by the circuit court of Crawford County. While the order may have been prepared by Bridgeview, it was not published by Bridgeview. The Prather Trust's own allegations indicate that the draft order was ultimately reviewed and approved by the circuit court within postjudgment proceedings to discover the assets of Putnam and its guarantors.

¶ 46    The first joint letter of direction, dated November 19, 2014, was drafted by Bridgeview. It was a joint letter from Bridgeview and Putnam to LincolnLand. However, according to the Prather Trust's own allegations and attachments, the letter was not signed by Bridgeview's representative, and it was not sent to LincolnLand because Terrence O'Malley, Putnam's representative, did not sign it until January 2015. By that time, Bridgeview had decided to pursue foreclosure proceedings against Putnam, rather than a joint letter of direction.

¶ 47    The second and third joint letters of direction were delivered to LincolnLand. In the second joint letter of direction, Bridgeview asserted that it was entitled to receive an adequate protection payment from LincolnLand, who had been holding the proceeds of the sale of the minerals from the mineral estate in accordance with the interim order of the bankruptcy court. According to the Prather Trust's allegations and attachments, Bridgeview had disclosed the Prather Trust's potential interests in the mineral estate to the bankruptcy court, and the bankruptcy court authorized the protection payments, subject to disgorgement if the bankruptcy court determined that Bridgeview was not entitled to the payments. Bridgeview attached an order from the bankruptcy court, authorizing protection payments as agreed by Putnam and Bridgeview. The third joint letter of direction, like the second, was directed to LincolnLand and asserted that Bridgeview was entitled to receive a payment from the proceeds of the sale of the minerals from the mineral estate based upon its judgment and liens. The Prather Trust has not alleged that these letters contained false

18

statements regarding its interest in the mineral estate. In sum, count XIII lacked a succinct and coherent assertion of specific facts to support the contention that Bridgeview made a false or malicious publication that disparaged the Prather Trust's title in the mineral estate. Therefore, the trial court did not err in dismissing the Prather Trust's slander of title claim against Bridgeview for failure to state a cause of action.

¶ 48                                    B. Summary Judgment

¶ 49     Next, we consider whether the trial court erred in entering a summary judgment in favor of Bridgeview on the Prather Trust's unjust enrichment claim. Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). In ruling on a motion for summary judgment, the trial court must construe the pleadings and evidentiary materials strictly against the movant and liberally in favor of the nonmovant. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). A triable issue exists where the material facts are disputed or where reasonable minds might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. A trial court's ruling on a motion for summary judgment is reviewed *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 50     In this case, the trial court entered summary judgment on the unjust enrichment count in favor of Bridgeview on procedural grounds. The trial court concluded that there is no independent cause of action for an unjust enrichment in Illinois. The Prather Trust argues that there is an independent cause of action for unjust enrichment. Bridgeview argues that unjust enrichment must be tied to an underlying cause of action in tort, contract, or statute and that, because all of the

19

plaintiff's other causes of action had been dismissed, it was entitled to a judgment as a matter of law on the unjust enrichment claim.

¶ 51    In *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145 (1989), the Illinois Supreme Court reviewed the dismissal of the plaintiffs' claim for damages under an unjust enrichment theory. The supreme court noted that the doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies. See *HPI Health Care*, 131 Ill. 2d at 160. The court then set forth the elements necessary to state a cause of action for unjust enrichment. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care*, 131 Ill. 2d at 160. The supreme court did not indicate that an unjust enrichment claim must be tethered to a separate, underlying cause of action. See *HPI Health Care*, 131 Ill. 2d at 160; *Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (1998) (finding that Illinois recognizes an independent cause of action for unjust enrichment under *HPI Health Care* and that unjust enrichment may be predicated on quasi-contract or tort); see also *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).

¶ 52    In *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248 (2004), the plaintiffs filed a one-count complaint seeking a declaration that an ordinance requiring the payment of impact fees to obtain a building permit was invalid and a refund of those fees under an unjust enrichment theory. The supreme court rejected the Village's claim that it was immune from liability for restitution under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8-101 (West 2000)). *Raintree Homes*, 209 Ill. 2d at 261. In its analysis, the supreme court found that the plaintiffs had "no substantive claim grounded in tort, contract, or statute" and,

20

therefore, the only "substantive basis for the claim" was restitution to prevent unjust enrichment. *Raintree Homes*, 209 Ill. 2d at 258.

¶ 53     Based upon these authorities, we find that our supreme court has recognized unjust enrichment as an independent cause of action. Therefore, the trial court erred in entering summary judgment in favor of Bridgeview on that basis.

¶ 54     In Bridgeview's motion for summary judgment, Bridgeview also argued the Prather Trust had not demonstrated that there was a genuine issue of material fact as to the claim that Bridgeview had been unjustly enriched. The trial court did not address that issue on the merits. Accordingly, we vacate the summary judgment order entered in favor of Bridgeview and remand the case for further proceedings. Should Bridgeview renew its motion for summary judgment on the merits, then the trial court will have to consider whether the Prather Trust can show that the defendant "retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care*, 131 Ill. 2d at 160. As our supreme court has noted, there are three conditions for determining when enrichment is unjust: (1) where the benefit should have been given to the plaintiff but the third party mistakenly gave it to the defendant instead, (2) where the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) where the plaintiff for some other reason had a better claim to the benefit than the defendant. See *HPI Health Care*, 131 Ill. 2d at 161-62.

¶ 55                                    III. CONCLUSION

¶ 56     For the reasons stated, we affirm the trial court's order dismissing the Prather Trust's claims against Bridgeview for forgery (count X), mail and wire fraud (XII), conversion (count XII), and slander of title (count XIII) with prejudice. We reverse the trial court's order granting

21

summary judgment in favor of Bridgeview on the claim for unjust enrichment (count VI) and remand this cause to the trial court for further proceedings.

¶ 57    Affirmed in part and reversed in part.

¶ 58    Cause remanded.

*O'Malley v. Adams*, **2023 IL App (5th) 210381**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Crawford County, No. 16-CH-9; the Hon. Sonja L. Ligon, Judge, presiding. |
| **Attorneys for Appellant:** | A. Courtney Cox, of Sandberg Phoenix & von Gontard, P.C., of Carbondale, for appellants. |
| **Attorneys for Appellee:** | Beau T. Greiman, of Greiman, Rome & Griesmeyer, LLC, of Chicago, for appellee. |